# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-1400

OPENWATER SAFETY IV, LLC

Plaintiff,

v.

CONCEPT SPECIAL RISKS, LTD, and

GREAT LAKES INSURANCE SE,

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff  Openwater Safety IV, LLC brings this Complaint and Jury Demand through its undersigned attorney.

## PARTIES

1. Plaintiff Openwater Safety IV, LLC ("Openwater" or "Insured") is a limited liability company organized under the laws of Delaware, which maintains its principal place of business in Denver, Colorado, at 1001 16th St. B-180 #301, Denver, CO 80265.  Its two managers are Colorado citizens, and its sole member is Greenwood Energy, LLC, which is organized under the laws of Delaware and maintains its principal place of business in Colorado.

1

2. Defendant Concept Special Risks, Ltd, ("Insurer") is a foreign company organized under the laws of the United Kingdom, which maintains its principal place of business in London, with a satellite office in Miami, Florida, and which issues maritime insurance policies and transacts business throughout the United States and its territories.

3. Defendant Great Lakes Insurance SE is a foreign company organized under the laws of the United Kingdom, which maintains its principal place of business in London, and which issues reinsurance contracts and transacts business throughout the United States and its territories.

**JURISDICTION, VENUE AND SERVICE OF PROCESS**

4. This case is based on application of Admiralty law and common law to an Insurance Agreement.

5. Plaintiff seeks declaratory relief under Title 28 to the United States Code, §2201 et seq. due to the present controversy existing between the parties concerning whether the maritime Insurance Agreement between the parties provides coverage of the damages resulting from the dismasting of the Plaintiff's vessel on April 29, 2018 in international waters off of the coast of Colombia.

6. Because this is a maritime contract case where the parties are of diverse citizenship and the amount in controversy exceeds $75,000 (exclusive of interest, costs and punitives), this Court has jurisdiction under the Admiralty Clause of the United States Constitution and 28 U.S.C. §1332.

7. Venue is proper in this Court under 28 U.S.C. §1391 because the Insured and its managers are Colorado citizens, and its sole member is a Delaware LLC with its principal office in Colorado; and because the Insurance Agreement at issue in this case specifically states that disputes under the agreement may be brought in the Federal District Court within which the Insured resides.

8. The Insurance Agreement also provides that service of process may be effected on any senior partner in the firm of Mendes & Mount, LLP at 750 7th Ave #24, New York NY 10019, and that they are expressly authorized and directed to accept service of process on the Defendants upon request of the Insured to enter a general appearance on the Defendants' behalf. The Insured, accordingly, requests Mendes & Mount, LLP, to enter a general appearance on behalf of the Defendants.

9. The Insurance Binder and Agreement was issued on April 4, 2018 to Plaintiff Openwater at 1001 16th Street B-180 #301, Denver, Colorado, 80265.

## FACTUAL ALLEGATIONS

10. On February 17, 2018, Greenwood Energy, LLC, a predecessor company and affiliate to Openwater Safety IV, LLC, entered into a Purchase and Sale Agreement in the amount of $780,000 to acquire a Lagoon 52F catamaran by the name of Paititi ("the Vessel").

11. On March 15, 2018, Jonathan Sands, Naval Architect, Marine Engineer and Professional Marine Surveyor conducted a pre-purchase survey, the most thorough type of survey in the industry. He completed his inspection report ("Sands Report"), which is attached as Ex. 1, on March 15.

12. The Sands Report concluded that:

   a) The Vessel had no "A", "Safety Related" deficiencies, which "should be addressed before the vessel is next underway…" [Ex. 1, p. 27].

   b) There were five "AA", "Regulatory Risk Related" deficiencies, which "may not necessarily be resolved prior to conducting a Sea Trial" [Ex. 1, p. 27].

   c) There were 31 "B", "Other Deficiencies", which "should be addressed in the near future…" [Ex. 1, pp. 29-31].

   d) There were 28 "C", "Surveyor Notes and Observations", which "may be done in the future…" [Ex. 1, pp. 31-33].

e) The Vessel was assigned an overall rating of "Average Condition" [Ex. 1, p. 34].

f) The fair market value of the Vessel was determined to be $850,000. [Ex. 1, p. 35].

g) The replacement cost was estimated to be $1,450,000. [Ex. 1, p. 35].

13. On March 28, 2018, Openwater Safety IV was incorporated in the State of Delaware for the purpose of owning, operating and chartering the Vessel.

14. On March 29, 2018, the Insured certified on a Letter of Survey Recommendations Compliance ("LOC"), attached as Ex. 2, that "recommendations" pertaining to the Vessel contained within the Sands Report, which was attached to the LOC, had been "complied with, other than those listed below…"

15. Since there were no "A" deficiencies, and "AA" deficiencies had been corrected as listed on the LOC, which Defendants admit, the remaining "recommendations" were "B" and "C" deficiencies that Jonathan Sands had said in his attached Report, which was attached  to the LOC and provided to the Defendants through their agent Doug Wager, could be addressed in the "future".

16. The Defendants knew, or should have known, that it would have been unrealistic to expect the 31 "B" deficiencies and 28 "C" deficiencies between the March 15 date of the Sands Report and the March 29 date of the LOC.

17. On April 6, after having received and reviewed the LOC and the attached Sands Report, the Defendants issued to Openwater the Temporary Binder attached as Ex. 3, attesting to proof of insurance of the Vessel.

18. On April 18, 2018, the Defendants were sent full payment of their insurance invoice of $10,999.

19. The Vessel was released to Openwater on April 26, 2018; and an application for a name change from from Paititi to Heavan is pending.

20. Relying on the Binder of insurance, in which the Defendants did not require or even suggest immediate correction of the "B" and "C" deficiencies that the Defendants had been advised of in the Sands Report attached to the March 29 LOC, the Captain of the Vessel was authorized to depart Shelter Bay, Panama on April 26, 2018.

21. On April 29, 2018, the mast of the Vessel came down in international waters off shore of Santa Marta, causing extensive damage to the Vessel.

22. On April 30, 2018, the Insured notified Mark Gargula, insurance broker at the Gowrie Group, of the accident.

23. On May 1, 2018, Joe Ellen of Wager & Associates contacted the Insured, informed the Plaintiff that they were the Adjustor on the claim, and requested various information, which was immediately provided.

24. On May 3, 2018, the Plaintiff's manager met the Defendants' surveyor, John Gordon, in Santa Marta, Colombia.

25. On May 4, 2018, John Gordon completed a report ("Gordon Report"), which is attached as Ex. 4.

26. In his report, Mr. Gordon said "…it is my opinion that very little or nothing on the surveyors [*sic*] recommendations as per the purchase survey [i.e., the Sands Report] have been done," even though he admits he had been informed that "it was the intention of the owner to effect all repairs in the Dominican Republic after vessels [*sic*] arrival" [Ex. 4] and even though he faults the owner only for not repairing the "B" and "C" deficiencies that Mr. Sands had advised were "recommendations" that could be addressed in the "future".

27. Without undertaking a reasonable investigation or taking into account that the Sands Report "recommendations" for "future" work was attached to the LOC that was provided to the Defendants, and was the basis for issuance of the Binder,  the Defendants have acted in bad faith by recklessly accusing the

Plaintiff's manager of falsifying the LOC and intentionally misrepresenting the pre-loss condition of the Vessel.

28. The Defendants have also refused to provide coverage for the dismasting incident of April 29, 2018, even though they acknowledge that the B and C deficiencies did not contribute to the rigging and mast failure.

29. The Defendants' refusal to honor the coverage provided by the Binder and Insuring Agreement (Ex. 5.) is based on their unreasonable assertion that "recommendations" to address items in the "future" were actually "requirements" that had to be met before execution of the LOC.

30. The Defendants' bad faith has been further demonstrated by their refusal to provide coverage under a reservation of rights for just the time it takes to move the vessel to a United States port better protected from hurricanes and tropical storms, even though Mr. Gordon, the Defendants' original surveyor has now made the repairs he deems necessary and has determined the vessel is seaworthy. More specifically, when the Plaintiff's manager proposed a reservation of rights, an Underwriter for the Defendants responded with an email on June 1, 2018, insisting that the Plaintiff admit "the letter of compliance was false". The Plaintiff contends that a reasonable interpretation of that statement is that the Defendants may agree to provide conditional and limited coverage during the time it takes to move the vessel to a United States

port, provided the Plaintiff agrees that its manager lied by providing false

information on the LOC. In other words, the Defendants are exhibiting extreme

bad faith by refusing to provide post-accident insurance unless the Plaintiff

forfeits its claim for losses resulting from the dismasting by admitting that the

LOC was intentionally falsified.

31. Upon information and belief, under New York law, the Defendants cannot

present sufficient documentation concerning their underwriting practices, such

as underwriting manuals, bulletins or rules pertaining to similar risks, to

establish that they would not have issued the same policy if other information

had been disclosed in LOC.

32. The Plaintiff's response to the ambiguous LOC cannot be the basis of a claim

of misrepresentation by the Defendants against the Plaintiff under New York

law because a reasonable person in the Plaintiff's position could have

rationally completed and executed the LOC as the Plaintiff's manager did.

## FIRST  CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS:

## DECLARATORY JUDGMENT

1. All the preceding and succeeding allegations and statements are incorporated by

reference.

2. This claim for Declaratory Judgment relief is brought under N.Y. C.P.L.R. Law §3001 Declaratory Judgment, which provides: "The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed."

3. There are justiciable controversies between the Plaintiff and the Defendants about:

   a) Whether the Defendants can be compelled to provide coverage for the Dismasting incident and resulting damages;

   b) Whether the Defendants are estopped from denying coverage because they were provided with the Sands Report as an attachment to the LOC;

   c) Whether the Defendants knew, or should have known, that when they received notice of the B and C items, Mr. Sands had advised that they were recommendations that could be addressed in the "future";

   d) Whether prior to issuance of the Binder the Plaintiff had made material misrepresentations under New York law that rendered the Binder or Insurance Agreement void or voidable;

e) Whether the LOC form prepared and issued by the Defendants is ambiguous and that under New York law it was reasonable for the Plaintiff's manager to complete the form the way he did:

f) Whether the Plaintiff made a good faith and timely effort to provide the Defendants with the information they requested to evaluate the Plaintiff's claim;

g) Whether the Defendants can deny coverage for the Dismasting and resulting damages, even though they admit none of the B or C deficiencies caused the Dismasting or contributed to it; and

h) Whether without just cause and upon information and belief as a general business practice, the Defendants have violated Section 2601 of the New York Insurance Statutes by:

   i.   Failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;

   ii.  ii) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

   iii. iii) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims;

iv.   iv) After having received a properly executed proof of loss, the
Defendants have failed to advise the Plaintiff of acceptance or denial of
the claim within thirty days.

4. Plaintiff requests that the Court declare that the Plaintiff's vessel was covered,
and remains covered, by insurance provided by the Defendants on and from the
date of issuance of the Binder.

## SECOND CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS:
## BREACH OF CONTRACT

1. All the preceding and succeeding allegations and statements are incorporated
by reference.

2. The Defendants entered into a contract with Openwater to provide insurance
coverage on the Vessel.

3. The Defendants have failed and refused to pay out on a covered claim,
and/or are threatening to fail and refuse to pay.

4. Plaintiff  Openwater substantially performed its part of the contract, and/or
is excused from full performance of its part of the contract because of what
the Defendants are now calling "requirements" that were misleadingly
labeled as "recommendations".

5. As a result of the Defendants' breach of the Insuring Agreement, the Plaintiff has incurred actual damages in amounts to be determined at trial for: a) the cost of repairs; b) the reduction in value of the vessel; c) the replacement value of the vessel; d) the loss of charter income; and e) attorney fees and costs.

6. The Plaintiff  seeks damages in excess of the coverage limits due to the Defendants' bad faith, dilatory tactics, avoidance of payment of the Plaintiff's proper claim, and breach of the duty to investigate, bargain and settle claims in good faith, as specified in the factual allegations of this Complaint. *Beck v. Farmers Ins. Exch.*, 701 P.2d 795;  *Acquista v. New York Life Insurance Company* (Sup. Ct. NY, 2001).

## DEMAND FOR JURY TRIAL

A jury is demanded as the trier of fact for all claims that are so eligible.

## PRAYER FOR RELIEF

Plaintiff Openwater Safety IV, LLC, prays that (1/4, and 2/5,6):

1. The Court declare that the Plaintiff's vessel was covered, and remains covered, by insurance provided by the Defendants on and from the date of issuance of the Binder.

2.  Plaintiff be awarded damages in amounts to be determined at trial for: a) the cost of repairs; b) the reduction in value of the vessel; c) the replacement value of the vessel; d) the loss of charter income; and e) attorney fees and costs.

3.  Plaintiff be awarded damages in excess of the coverage limits due to the Defendants' bad faith, dilatory tactics, avoidance of payment of the Plaintiff's proper claim, and breach of the duty to investigate, bargain and settle claims in good faith.

4.  Plaintiff be awarded any other relief to which the Court finds it to be justly entitled.

Respectfully submitted this 6th day of June, 2018, electronically via CM/ECF.

*/s/ Richard A. Oertli*

Richard A. Oertli, #24936
24800 Squaw Pass
Evergreen CO 80439
720-799-5217
dickoertli@gmail.com

Attorney for Plaintiff Openwater Safety IV, LLC