**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-1400

OPENWATER SAFETY IV, LLC

Plaintiff,

v.

CONCEPT SPECIAL RISKS, LTD, and

GREAT LAKES INSURANCE SE,

Defendants.

**OPENWATER'S AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Openwater Safety IV brings this Amended Complaint and Jury Demand through its undersigned attorney.

**PARTIES**

1. Plaintiff Openwater Safety IV, LLC ("Openwater" or "Insured") is a limited liability company organized under the laws of Delaware, which maintains its principal place of business in Denver, Colorado, at 1001 16th St. B-180 #301 Denver, CO 80265. Its two managers are Colorado citizens: and its sole

member is Greenwood Energy, LLC, which is organized under the laws of Delaware and maintains its principal place of business in Colorado.

2. Defendant Concept Special Risks, Ltd, ("Concept") is a foreign company organized under the laws of the United Kingdom, which maintains its principal place of business in London, and which issues maritime insurance policies and transacts business throughout the United States and its territories.

3. Defendant Great Lakes Insurance SE ("Great Lakes") is a foreign company organized under the laws of the United Kingdom, which maintains its principal place of business in London, and which issues reinsurance contracts and transacts business throughout the United States and its territories.

## JURISDICTION, VENUE AND SERVICE OF PROCESS

4. The parties are of diverse citizenship and the amount in controversy exceeds $75,000 (exclusive of interest, costs). This Court has jurisdiction under 28 U.S.C. §1332.

5. Venue is proper in this Court under 28 U.S.C. §1391 because: a) the Insured and its managers are Colorado citizens, and its sole member is a Delaware LLC with its principal office in Colorado; b) in an "Insuring Agreement", which Defendants contend is relevant, Concept and Great Lakes represented that disputes may be brought in the Federal District Court within which the Insured resides; and c) The Insurance Binder and Agreement was issued on April 4,

2018 to Plaintiff Openwater at 1001 16th Street B-180 #301, Denver, Colorado, 80265.

## GENERAL ALLEGATIONS

6. On February 17, 2018, Greenwood Energy, LLC, a predecessor company and affiliate to Openwater Safety IV, LLC, entered into a Purchase and Sale Agreement in the amount of $780,000 to acquire a Lagoon 52F catamaran by the name of *Paititi* ("the Vessel").

7. On March 15, 2018, Jonathan Sands, Naval Architect, Marine Engineer and Professional Marine Surveyor conducted a pre-purchase survey. He completed his inspection report ("Sands Report") on March 15, 2018. Ex. 2 to Complaint (Docket #1)

8. The Sands Report concluded that:

   a) The Vessel had no "A", "Safety Related" deficiencies, which "should be addressed before the vessel is next underway…" p. 27

   b) There were five "AA", "Regulatory Risk Related" deficiencies, which "may not necessarily be resolved prior to conducting a Sea Trial". p. 27.

   c) There were 31 "B", "Other Deficiencies", which "should be addressed in the near future…" pp. 29-31.

    d) There were 28 "C", "Surveyor Notes and Observations", which "may be done in the future…" pp. 31-33.

    e) The Vessel was assigned an overall rating of "Average Condition" p. 34.

    f) The fair market value of the Vessel was determined to be $850,000. p. 35.

    g) The replacement cost was estimated to be $1,450,000. p. 35.

9. On March 28, 2018, Openwater Safety IV was incorporated in the State of Delaware for the purpose of owning, operating and chartering the Vessel.

10. On March 29, 2018, the Insured certified on the face of a Letter of Survey Recommendations Compliance ("LOC") that "Repairs **will** be made by owner". Ex. 3 to Complaint. The Sands Report, with its recommendations about items to be addressed in the "future", was attached to the LOC.

11. Since there were no "A" deficiencies, and "AA" deficiencies had been corrected as listed on the LOC, which Defendants admit, the remaining "recommendations" were "B" and "C" deficiencies that Jonathan Sands had said in his attached Report, which was attached to the LOC and provided to the Defendants through their agent Doug Wager, could be addressed in the "future".

12. On April 6, after having received and reviewed the LOC and the attached Sands Report, Concept issued to Openwater a Temporary Binder attesting to proof of insurance of the Vessel. Ex. 4 to Complaint.

13. On April 18, 2018, Concept was sent full payment of its insurance invoice of $10,999.

14. The Vessel was released to Openwater on April 26, 2018; and an application for a name change from *Paititi* to *Heavan* is pending.

15. Relying on the Binder of insurance, in which the Defendants did not require or even suggest immediate correction of the "B" and "C" deficiencies that the Defendants had been advised of in the Sands Report attached to the March 29 LOC, the Captain of the Vessel was authorized to depart Shelter Bay, Panama on April 26, 2018.

16. On April 29, 2018, the mast of the Vessel came down in international waters off shore of Santa Marta, causing extensive damage to the Vessel.

17. On May 1, 2018, Jo Ellen Martin of Wager & Associates contacted the Insured, informed the Plaintiff that they were the Adjustor on the claim, and requested various information, which was immediately provided. Ex. 4 to Response to Motion to Dismiss (Docket #29).

18. When Openwater received the email and letter on May 1 from Wager, Openwater's managers understood Wager was acting as the agent for Concept in the United States and that Openwater should deal with Wager to make a claim for the loss on April 29, 2018, and provide whatever information was needed to investigate Openwater's claim.

19. Openwater understood that at all times Wager was acting as the agent for Concept.

20. Openwater received several emails from Wager directly [e.g. WF000618, WF000623, WF000626] and Concept indirectly [e.g. WF000604, WF000618] accusing Openwater of having made misrepresentations. Aff. para. 8 (Ex. 3 to Response to Motion to Dismiss, Docket #29), and Appendix p. 148, 152, 154, 155 (in three parts because of file size, Docket #31/32)

21. Openwater sent several emails to Wager, presenting facts that show Openwater had not made misrepresentations [e.g. WF000632-635]. Aff. para. 9, and Appendix p. 157-160.

22. Openwater received several emails from Wager indicating Concept was denying coverage [e.g. WF000548, WF000600]. Aff. para. 10, and Appendix p. 140, 146.

23. Openwater received several emails from Wager, indicating Concept would not even issue a reservation of rights letter allowing Openwater to leave the port of Santa Marta, Colombia, and obtain necessary repairs in the United States [e.g. WF000706-WF000711 and WF000714]. Aff. para. 11, and Appendix pp. 178-184.

24. Openwater never received a Policy insuring its vessel.

## CONCEPT'S INVOLVEMENT

25. On April 4, 2018, after having received from Wager the LOC and the attached Sands Report, Concept issued to Openwater the Temporary Binder, with coverage beginning on April 7.

26. On April 18, 2018, Concept received a full premium payment of $10,999 from Openwater's Colorado Bank.

27. Although the premium was not earned, it has not been returned.

28. Neither Concept or Wager was authorized by Openwater to keep the unearned premium. Aff. para. 19.

29. The decision to provide temporary coverage and the decision to deny coverage was made by a Manager and a Director of Concept.

30. Concept's communications with Openwater were all to and from Colorado through its assigned agent, Wager, which is based in Florida.

31. Concept made **all** of the underwriting decisions, initially providing coverage of Openwater's vessel by issuing a Temporary Binder that was in effect on the day of the dismasting of the vessel, and later denying coverage after the loss.

32. Concept agreed that disputes could be resolved in the Federal District Court where the Insured resides.

33. The language about disputes being brought in a Federal District where the Insured resides is in a fourteen-page document entitled Premier Commercial

Yacht Insuring Agreement. Ex. 6 to Complaint. The following appears at the top of each page: "Concept Special Risks…www.special-risks.co.uk". On the last page there is a box that begins with "This wording is the property of Concept Special Risks Ltd…". Aff. para. 23. Great Lakes is not mentioned in the Premier Commercial Yacht Insuring Agreement. Id. The reference to "dispute" clearly refers to disputes with Concept.

34. Also, the following appears on page 14 of the Premier Commercial Yacht Insuring Agreement: "Further, pursuant to any Statute of any State…Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance …as their true and lawful attorney upon whom may be served any lawful process in any action…". Again, Great Lakes is not mentioned in the Premier Commercial Yacht Insuring Agreement. In a leaflet entitled "Concept Special Risks Limited – US Operating instructions," Concept describes itself as "Underwriting agents." Ex. 1 to this Amended Complaint. Concept is the "Underwriter" that has consented to accept service through Colorado's Director of Insurance.

35. On May 1, 2018, Jo Ellen Martin of Wager & Associates contacted the Insured, informed the Plaintiff that they were the Adjustor on the claim, and requested various information, which was immediately provided. Ex. 4 to Response to Motion to Dismiss (Docket #29).

36. Openwater's manager understood Wager was acting as the agent for Concept in the United States and that Openwater should deal with Wager to make a claim for the loss on April 29, 2018, and provide whatever information was needed to investigate Openwater's claim.

37. Openwater understood that at all times Wager was acting as the agent for Concept.

38. Openwater received several emails from Wager directly and Concept indirectly accusing Openwater of having made misrepresentations.

39. Openwater sent several emails to Wager, presenting facts that show Openwater had not made misrepresentations.

40. Openwater received several emails from Wager indicating Concept was denying coverage.

41. Openwater received several emails from Wager, indicating Concept would not even issue a reservation of rights letter allowing Openwater to leave the port of Santa Marta, Colombia, and obtain necessary repairs in the United States.

42. Upon information and belief, Great Lakes has vested absolute authority in Concept to bind and deny insurance, which may mean Concept is the insurer, and Great Lakes is a re-insurer.

## BAD FAITH

43. Without undertaking a reasonable investigation or taking into account that the Insured stated on the LOC that "Repairs **will** be made by owner", and that the attached Sands Report referred to "recommendations" for "future" work, the Defendants have acted in bad faith by recklessly accusing the Plaintiff's manager of falsifying the LOC and intentionally misrepresenting the pre-loss condition of the Vessel.

44. The Defendants have also refused to provide coverage for the dismasting incident of April 29, 2018, even though they acknowledge that the B and C deficiencies did not contribute to the rigging and mast failure.

45. The Defendants refusal to honor the coverage provided by the Binder and Insuring Agreement is based on their unreasonable assertion that "recommendations" to address items in the "future" were actually "requirements" that had to be met before execution of the LOC.

46. The Defendants' bad faith has been further demonstrated by their refusal to provide coverage under a reservation of rights for just the time it takes to move the vessel to a United States port better protected from hurricanes and tropical storms, even though Mr. Gordon, the Defendants' original surveyor has now made the repairs he deems necessary and has determined the vessel is seaworthy. More specifically, when the Plaintiff's manager proposed a

reservation of rights, an Underwriter for the Defendants responded with an email on June 1, 2018, insisting that the Plaintiff admit "the letter of compliance was false". The Plaintiff contends that a reasonable interpretation of that statement is that the Defendants may agree to provide conditional and limited coverage during the time it takes to move the vessel to a United States port, provided the Plaintiff agrees that its manager lied by providing false information on the LOC. In other words, the Defendants are exhibiting extreme bad faith by refusing to provide post-accident insurance unless the Plaintiff forfeits its claim for losses resulting from the dismasting by admitting that the LOC was intentionally falsified.

47. The Defendants have not presented sufficient documentation concerning their underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that they would not have issued the same policy if other information had been disclosed in the LOC.

48. The Plaintiff's response to the ambiguous LOC cannot be the basis of a claim of misrepresentation by the Defendants against the Plaintiff because a reasonable person in the Plaintiff's position could have rationally completed and executed the LOC as the Plaintiff's manager did.

49. Admiralty law does not apply because the tort was committed in Colorado and not on navigable waters.

50. New York law does not apply because Openwater was never given, and never agreed to, a Policy that stated the governing law was New York.

## CAUSES OF ACTION

**FIRST CLAIM AGAINST BOTH DEFENDANTS: BAD FAITH BREACH OF TEMPORARY BINDER**

51. The prior and following allegations are incorporated into this claim for relief.

52. Concept issued a Temporary Binder of Insurance ("Binder") to Openwater on April 4, which became effective on April 7, 2018, and which was to remain in effect until May 7.

53. On April 29, 2017, Openwater's insured vessel was dismasted and as a result of the dismasting the vessel was extensively damaged.

54. Openwater submitted a claim under the Binder.

55. Concept denied the claim.

56. Concept stated the reason for the denial was misrepresentation regarding pre-loss repairs.

57. Concept's denial of the claim and coverage was made in bad faith.

58. Concept has admitted that before issuing the Binder it had received a Letter of Compliance ("LOC") executed by Openwater, which stated on the face of the LOC that "repairs will be made by owner".

59. The Sands Report was attached to the LOC, and it stated that the 31 "B" "Other Deficiencies" "should be addressed in the near future…" and the 28 "C" "Surveyor Notes and Observations" "may be done in the future…" .

60. Concept refused to provide temporary coverage while the vessel was transported to a United States port for repairs, even though the vessel was deemed seaworthy by an inspector retained by Concept.

61. Concept acted unreasonably in investigating and denying Openwater's claim.

62. As a result of Concept's unreasonable conduct, Openwater has suffered damages in excess of coverage limits.

63. Because of Concept's bad faith, Openwater may recover an amount in damages in excess of the limits of coverage stated in the Binder.

64. As Concept's principal, Great Lakes is responsible for the bad faith breach of the Binder by Concept.

65. Great Lakes also acted in bad faith by filing and maintaining Counterclaims in this action that are based on a Policy of insurance that it now admits was never issued.

**SECOND CLAIM AGAINST BOTH DEFENDANTS: BREACH OF CONTRACT**

66. All the preceding and succeeding allegations and statements are incorporated by reference.

67. The Defendants entered into a Temporary Binder agreement with Openwater to provide insurance coverage on Openwater's vessel.

68. The Defendants have failed and refused to pay out on a covered claim.

69. Plaintiff Openwater substantially performed its part of the contract, and/or is excused from full performance of its part of the contract because of what the Defendants are now calling "requirements" that were misleadingly labeled as "recommendations".

70. As a result of the Defendants' breach of the Temporary Binder, the Plaintiff has incurred actual damages in amounts to be determined at trial for: a) the cost of repairs; b) the reduction in value of the vessel; c) the replacement value of the vessel; d) the loss of charter income; and e) attorney fees and costs.

71. The Plaintiff seeks damages in excess of the coverage limits due to the Defendants' dilatory tactics, avoidance of payment of the Plaintiff's proper claim, breach of the duty to investigate, bargain and settle claims in good faith, as specified in this Complaint.

72. Concept and Great Lakes owed Openwater the duty of good faith and fair dealing.

73. Concept and Great Lakes breached their duty of good faith and fair dealing by unreasonably denying the claim and coverage.

## THIRD CLAIM AGAINST CONCEPT: VIOLATION OF 10-3-1104 (1)(M) AND 10-3-1115

74. All the preceding and succeeding allegations and statements are incorporated by reference.

75. Concept and Great Lakes violated C.R.S. 10-3-1104(1) and 10-3-1115 by failing to return to Openwater the unearned premium.

## FOURTH CLAIM AGAINST CONCEPT: CIVIL THEFT

76. All the preceding and succeeding allegations and statements are incorporated by reference.

77. Concept knowingly obtained Openwater's unearned premium payment property and, with an intent to permanently deprive Openwater of the use and benefit of his property, exercised control over the unearned premium paid by Openwater, without authorization, and knowingly used the unearned premium in a manner as to permanently deprive Plaintiff of the use and benefit of his property.

78. Openwater is entitled to recover treble damages and attorney fees.

## FIFTH CLAIM AGAINST BOTH DEFENDANTS: DECLARATORY JUDGMENT Against Concept and Great Lakes

79. All the preceding and succeeding allegations and statements are incorporated by reference.

80. There are justiciable controversies between the Plaintiff and the Defendants about:

    a) Whether the Defendants can be compelled to provide coverage for the Dismasting incident and resulting damages;

    b) Whether the Defendants are estopped from denying coverage because they were provided with the Sands Report as an attachment to the LOC;

    c) Whether the Defendants knew, or should have known, that when they received notice of the B and C items, Mr. Sands had advised that they were recommendations that could be addressed in the "future";

    d) Whether prior to issuance of the Binder the Plaintiff had made material misrepresentations that rendered the Binder or Insurance Agreement void or voidable;

    e) Whether the LOC form prepared and issued by the Defendants is ambiguous and that it was reasonable for the Plaintiff's manager to complete the form the way he did:

    f) Whether the Plaintiff made a good faith and timely effort to provide the Defendants with the information they requested to evaluate the Plaintiff's claim; and

g) Whether the Defendants can deny coverage for the Dismasting and resulting damages, even though they admit none of the B or C deficiencies caused the Dismasting or contributed to it.

81. Plaintiff requests that the Court declare that the Plaintiff's vessel was covered, and remains covered, by insurance provided by the Defendants on and from the date of issuance of the Binder.

## JURY DEMAND

A jury is demanded as the trier of fact for all claims that are so eligible.

Respectfully submitted this 25th day of September, 2018.

*/s/ Richard A. Oertli*

Richard A. Oertli, #24936
24800 Squaw Pass
Evergreen CO 80439
720-799-5217
Email: dickoertli@gmail.com
Counsel for Openwater Safety IV, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

ATTORNEYS FOR DEFENDANTS:

Michael Isaac Goldman
Goldman & Hellman-Brookline
233 Harvard Street
Suite 211
Brookline, MA 02446
617-320-9854
Fax: 617-566-4292
Email: michael@goldmanandhellman.com

Ivan Arek Sarkissian
McConaughy & Sarkissian, P.C.
8310 South Valley Highway
The Pointe at Inverness
Suite 250
Englewood, CO 80112
303-649-0999
Email: isarkissian@mslawpc.com

Steven E. Goldman
Goldman & Hellman
8751 West Broward Boulevard
Suite 404
Ft. Lauderdale, FL 33324
954-356-0460
Fax: 954-832-0878
Email: steven@goldmanandhellman.com

Elizabeth LaVance
McConaughy & Sarkissian, P.C.
8310 South Valley Highway
The Pointe at Inverness
Suite 250
Englewood, CO 80112

                303-649-0999
                Fax: 303-649-0990
                Email: elavance@mslawpc.com

*/s/ Gregg Roberts*

Gregg Roberts
Legal Assistant for Richard A. Oertli
gregg@legalsupport-sc.com