## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-1400

OPENWATER SAFETY IV, LLC

Plaintiff,


v.

GREAT LAKES INSURANCE SE,

Defendant.


### OPENWATER'S AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Openwater Safety IV brings this Amended Complaint and Jury Demand through its undersigned attorney.

### PARTIES

1. Plaintiff  Openwater Safety IV, LLC ("Openwater" or "Insured") is a limited liability company organized under the laws of Delaware, which maintains its principal place of business in Denver, Colorado, at 1001 16th St. B-180 #301 Denver, CO 80265. Its two managers are Colorado citizens: and its sole member is Greenwood Energy, LLC, which is organized under the laws of Delaware and maintains its principal place of business in Colorado.

2. Defendant Great Lakes Insurance SE ("Great Lakes" or "Insurer") is a foreign company organized under the laws of the United Kingdom, which maintains its principal place of business in London, and which transacts business throughout the United States and its territories.

## JURISDICTION AND VENUE

3. The parties are of diverse citizenship and the amount in controversy exceeds $75,000 (exclusive of interest, costs).

4. This Court has jurisdiction under the Admiralty Clause of the Constitution, and 28 U.S.C. §1332.

## GENERAL ALLEGATIONS

5. On February 17, 2018, Greenwood Energy, LLC, a predecessor company and affiliate to Openwater Safety IV, LLC, entered into a Purchase and Sale Agreement in the amount of $780,000 to acquire a Lagoon 52F catamaran by the name of *Paititi* ("the Vessel").

6. On March 15, 2018, Jonathan Sands, Naval Architect, Marine Engineer and Professional Marine Surveyor conducted a pre-purchase survey. He completed his inspection report ("Sands Report") on March 15, 2018.  Ex. 1.

7. The Sands Report concluded that:

a) The Vessel had no "A", "Safety Related" deficiencies, which "should be addressed before the vessel is next underway…" Ex. 1, p. 27

b) There were five "AA", "Regulatory Risk Related" deficiencies, which "may not necessarily be resolved prior to conducting a Sea Trial". Ex. 1, p. 27.

c) There were 31 "B", "Other Deficiencies", which "should be addressed in the near future…" Ex. 1, pp. 29-31.

d) There were 28 "C", "Surveyor Notes and Observations", which "may be done in the future…" Ex. 1, pp. 31-33.

e) The Vessel was assigned an overall rating of "Average Condition". Ex. 1, p. 34.

f) The fair market value of the Vessel was determined to be $850,000. Ex.12, p. 35.

g) The replacement cost was estimated to be $1,450,000.  Ex. 1, p. 35.

8. On March 28, 2018, Openwater Safety IV, LLC was registered in the State of Delaware for the purpose of owning, operating and chartering the Vessel.

9. On March 29, 2018, the Insured certified on the face of a Letter of Survey Recommendations Compliance ("LOC") that "Repairs **will** be made by owner". Ex. 2.

10. Concept Special Risks, Ltd. ("Concept") received the LOC and Sands Report on behalf of the Insurer and as its authorized agent.

3

11. The Sands Report, with its recommendations about items to be addressed in the "future", was attached to the LOC.

12. There were no "A" deficiencies in the Sands Report.

13. The "AA" deficiencies in the Report had been corrected.

14. The remaining "recommendations" were "B" and "C" deficiencies that Jonathan Sands had said in his Sands Report could be addressed in the "future".

15. On April 6, 2018, after having received and reviewed the LOC and the attached Sands Report, the Insurer issued to Openwater a Temporary Binder attesting to proof of insurance of the Vessel ("Binder of Insurance"). Ex. 3.

16. The Binder of insurance refers to "Insuring Agreement Wording: As per PYP/5/COM…."

17. No Insuring Agreement was provided to Openwater until after the loss.

18. The Insuring Agreement that was provided after the loss did not provide the coverage that was requested or for which coverage was paid in full.

19. On April 18, 2018, the Insurer was sent full payment of its insurance invoice of $10,999.

20. When the Insurer received payment of the full premium, the Binder of Insurance was in full effect.

21. When the Insurer received payment of the full premium, the Insurer knew or should have known that the "B" and "C" deficiencies had not yet been corrected.

22. The Vessel was released to Openwater on April 26, 2018; and an application for a name change from *Paititi* to *Heavan* was pending.

23. The Insurer insured the Vessel after being informed by the Insured that recommended "repairs will be made by owner" in the "future".

24. The Insurer insured the Vessel after being informed by the Insured that a licensed inspector had certified that there were "B" deficiencies that "should be addressed in the near future".

25. The Insurer insured the Vessel after being informed by the Insured that a licensed inspector had certified there were "C" deficiencies that "may be done in the future".

26. The Insurer never requested correction of the "B" and "C" deficiencies.

27. The LOC asks for information about "recommendations", not requirements.

28. Relying on the Binder of Insurance, the Insured authorized the Captain of the Vessel to depart Shelter Bay, Panama on April 26, 2018 for a port where Openwater was to have the "B" and "C" deficiencies corrected.

29. On April 29, 2018, the mast of the Vessel came down in international waters off shore of Santa Marta, Colombia, causing extensive damage to the Vessel.

30. None of the "B" and "C" deficiencies caused the dismasting.

31. The Vessel had been declared seaworthy.

32. The dismasting was an accident.

33. In response to a claim made by Openwater, on May 1, 2018, Jo Ellen Martin of Wager & Associates contacted the Insured, and informed the Plaintiff that it was the Adjustor and acting for the Insurer on the claim.

34. The Adjustor requested information, which was immediately provided by Openwater.

35. On behalf of the Insurer, and with the Insurer's approval, Concept sent Openwater emails accusing Openwater of having made misrepresentations.

36. Openwater sent responsive emails, presenting information as to why Openwater was contending it had not made misrepresentations.

37. On behalf of the Insurer, and with the Insurer's approval, Concept sent emails to Openwater, indicating the Insurer was denying coverage.

38. On behalf of the Insurer, and with the Insurer's approval, Concept sent emails to Openwater, indicating the Insurer would not issue a reservation of rights letter allowing Openwater to leave Santa Marta and obtain necessary repairs in the United States.

39. Without undertaking a reasonable investigation or taking into account that the Insured stated on the LOC that "Repairs **will** be made by owner", and that the

6

attached Sands Report referred to "recommendations" for "future" work, the Insurer has breached the Binder of Insurance and has acted in bad faith by recklessly accusing the Plaintiff's manager of falsifying the LOC and intentionally misrepresenting the pre-loss condition of the Vessel.

40. The Insurer has also refused to provide coverage for the dismasting incident of April 29, 2018, even though it acknowledges that the B and C deficiencies did not contribute to the rigging and mast failure.

41. The Insurer's refusal to provide coverage, was based in part on its assertion that "recommendations" to address items in the "future" were actually "requirements" that had to be met before execution of the LOC.

42. The Insurer's refusal to provide coverage was based on its assertion that "recommendations" to address items in the "future" were actually "requirements" that had to be met before issuance of the Temporary Binder of Insurance.

43. The Insurer's bad faith has been demonstrated by its refusal to provide coverage under a reservation of rights for just the time it would have taken to move the vessel to a United States port better protected from hurricanes and tropical storms.

44. The Insurer's bad faith has been demonstrated by the Insurer not providing
Openwater until after the loss with a copy of an insuring agreement that
contains warranties the Insurer claimed Openwater breached.

45. Mr. Gordon, the Insurer's post-loss surveyor, made the repairs he deemed
necessary and determined the vessel was seaworthy.

46. When the Plaintiff's manager proposed a reservation of rights, Concept, on
behalf of the Insurer, and with the Insurer's approval, responded with an email
on June 1, 2018, insisting that the Plaintiff admit "the letter of compliance was
false".

47. The Insurer exhibited extreme bad faith by refusing to provide post-accident
insurance unless the Plaintiff forfeited its claim for losses resulting from the
dismasting by admitting that the LOC was clearly false.

48. The Insurer has not presented sufficient documentation concerning its
underwriting practices, such as underwriting manuals, bulletins or rules
pertaining to similar risks, to establish that it would not have issued the Binder
of Insurance if other information had been disclosed in the LOC.

49. The Plaintiff's response to the ambiguous LOC cannot be the basis of a claim
of misrepresentation by the Insurer against the Plaintiff because a reasonable
person in the Plaintiff's position could have rationally completed and executed
the LOC as the Plaintiff's manager did.

50. The alleged misrepresentations were not material.

51. The facts the Insurer claims were misrepresented would not have led to a refusal by the Insurer to issue the Binder of Insurance.


**FIRST CLAIM AGAINST GREAT LAKES: BREACH OF CONTRACT**

52. All the preceding and succeeding allegations and statements are incorporated by reference.

53. Great Lakes issued a Temporary Binder of Insurance to Openwater on April 4, which became effective on April 7, 2018, and which was to remain in effect until May 10.

54. On April 29, 2017, Openwater's insured vessel was dismasted and as a result of the dismasting the vessel was extensively damaged.

55. Openwater submitted a claim under the Binder.

56. The claim was denied.

57. After minimum repairs were made in a foreign port, the vessel was deemed seaworthy by a licensed inspector retained by Great Lakes.

58. Defendant refused to pay out on the Temporary Binder in any amount, even the amount required to conduct minimum repairs to return the vessel to the United States.

59. The stated reason for the denial was misrepresentations regarding pre-loss repairs.

60. Through its agent, Great Lakes has admitted that before issuing the Binder it had received a Letter of Compliance ("LOC") executed by Openwater, which stated on the face of the LOC that "repairs will be made by owner".

61. Openwater certified in the LOC that the more serious deficiencies in the vessel had been corrected, though there remained unresolved, less serious issues as recognized in the attached Sands Report.

62. The Sands Report was attached to the LOC, and it stated that the 31 "B" "Other Deficiencies" "should be addressed in the near future…" and the 28 "C" "Surveyor Notes and Observations" "may be done in the future".

63. Great Lakes acted unreasonably in investigating and denying Openwater's claim.

64. The Insured entered into a Temporary Binder of Insurance with Openwater to provide insurance coverage on Openwater's Vessel.

65. Great Lakes breached the Binder agreement by refusing to pay out on a covered claim.

66.  The Insured knew when it received notice of the B and C items, Mr. Sands had advised that they were recommendations that could be addressed in the "future".

67. The LOC form prepared and issued by Great Lakes is ambiguous and it was reasonable for the Plaintiff's manager to complete the form the way he did.

68. The Plaintiff provided Great Lakes with the information requested to evaluate the Plaintiff's claim.

69. Plaintiff Openwater substantially performed its part of the contract, and/or is excused from full performance of its part of the contract because of what Great Lakes are now calling "requirements" that were misleadingly labeled as "recommendations".

70. Great Lakes owed Openwater the duty of good faith and fair dealing.

71. As a result of breach of the Temporary Binder, the Plaintiff has incurred actual damages in amounts to be determined at trial for: a) the cost of repairs; b) the reduction in value of the vessel; c) the replacement value of the vessel; d) the loss of charter income; and e) attorney fees and costs.

72. The Plaintiff seeks damages in excess of the coverage limits due to a) the Insurer's dilatory tactics, and avoidance of payment of the Plaintiff's proper claim; b) breach of the duty to investigate, bargain and settle claims in good faith; c) falsely claiming that Openwater was bound by warranty conditions in an Insuring Agreement that was not provided to Openwater until after the loss, unreasonably denying the claim; and d) allowing the Vessel to set sail knowing Openwater understood that the Vessel was fully covered after Openwater made

full payment of the premium and received the Binder of Insurance, with no insuring agreement attached.

## SECOND CLAIM AGAINST GREAT LAKES: DECLARATORY JUDGMENT

73. All the preceding and succeeding allegations and statements are incorporated by reference.

74. There are justiciable controversies between the Plaintiff and Great Lakes about:

   1) Whether Great Lakes can be compelled to provide coverage for the dismasting incident and resulting damages;

   2) Whether Great Lakes is estopped from denying coverage because it was provided with the Sands Report as an attachment to the LOC.

   3) Whether Great Lakes can deny coverage for the dismasting and resulting damages, even though they admit none of the B or C deficiencies caused the dismasting or contributed to it.

75. Plaintiff requests that the Court declare that the Plaintiff's vessel was covered, and remains covered, by insurance provided by Great Lakes on and from the date of issuance of the Binder.

## JURY DEMAND

A jury is demanded as the trier of fact for all claims that are so eligible.

Respectfully submitted this 17th day of December, 2018.

*/s/ Richard A. Oertli*

Richard A. Oertli, #24936
24800 Squaw Pass
Evergreen CO 80439
720-799-5217
Email: dickoertli@gmail.com
Counsel for Openwater Safety IV, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

ATTORNEYS FOR DEFENDANT:

Michael Isaac Goldman
Goldman & Hellman-Brookline
233 Harvard Street
Suite 211
Brookline, MA 02446
617-320-9854
Fax: 617-566-4292
Email: michael@goldmanandhellman.com

Steven E. Goldman
Goldman & Hellman
8751 West Broward Boulevard
Suite 404
Ft. Lauderdale, FL 33324
954-356-0460
Fax: 954-832-0878
Email: steven@goldmanandhellman.com

Elizabeth LaVance
McConaughy & Sarkissian, P.C.
8310 South Valley Highway
The Pointe at Inverness
Suite 250
Englewood, CO 80112
303-649-0999
Fax: 303-649-0990
Email: elavance@mslawpc.com

*/s/ Gregg Roberts*

Gregg Roberts
Legal Assistant for Richard A. Oertli
gregg@legalsupport-sc.com