**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**
**IN ADMIRALTY**

CASE NO. 18-CV-1400-CMA

OPENWATER SAFETY IV, LLC,
Plaintiff/Counter-Defendant,

v.

GREAT LAKES INSURANCE SE,
Defendant/Counter-Plaintiff.
_____/

**GREAT LAKES INSURANCE SE'S MOTION TO AMEND ITS**
**COUNTERCLAIM UNDER FEDERAL RULES OF CIVIL PROCEDURE 15**

COMES NOW the Defendant, GREAT LAKES REINSURANCE SE, by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule of 15.1 of the United States District Court for the District of Colorado, and for its motion to file an amended pleaded (including incorporated memorandum of law) respectfully states as follows:

As detailed herein, facts revealed in discovery show that, in addition to the multiple bases for denial of coverage laid out in the Defendant's Counterclaim, the Plaintiff also failed disclose one of the vessel's operator's on the application for insurance and breached the Named Operator Warranty contained within the disputed policy of marine insurance. Consequently, for the reasons stated herein, Defendant GREAT LAKES INSURANCE SE moves that this Court allow the Defendant to amend its counterclaim to add two new cause of action based on previously unknown facts revealed during the course of discovery.

1

**Statement of Facts**

The present suit and motion arise out of a policy of marine insurance issued by the Defendant, GREAT LAKES INSURANCE SE (hereinafter "GLI") to the Plaintiff, OPENWATER SAFETY IV, LLC (hereinafter "OPENWATER"). The policy of marine insurance, Policy No. CSRYP/167347, including the Temporary Binder and the policy terms and conditions, is on record with this Court as Docket Entry #9-3. The policy afforded $780,000.00 in first party property damage coverage for the vessel named "Heavan", a 2013 52' Lagoon sailing vessel with twin Yanmar 74hp engines (hereinafter "the vessel"). DE#9-3, p. 1.

In order to obtain this policy of marine insurance, OPENWATER filled out an application form requiring the truthful disclosure of all facts material to the underwriter's decision to accept the risk and material to the underwriter's decision as to the terms of the risk. The application is on record with this Court as Docket Entry #9-1. The application form was executed by Evan Genaud on April 2, 2018. *Id*. Evan Genaud is one of the two members of Greenwood Energy, LLC. DE#30-3. OPENWATER SAFETY IV, LLC is 100% owned by Greenwood Energy, LLC. *Id*. The application stated, "ALL OPERATORS MUST BE DETAILED. IF THERE ARE MORE THAN TWO OPERATORS PLEASE REQUEST ADDITIONAL OPERATORS SHEETS." DE#9-1, p. 3 [emphasis in original]. On the application, OPENWATER disclosed only two operators; (1) Evan-Pierre Bernard Genaud and (2) Manuel Giovanni Cardenas Martinez. *Id*. The application further stated, "**WARNING: THIS IS A NAMED OPERATOR ONLY POLICY**." *Id* (emphasis in original).

At the time the application was executed, OPENWATER also submitted a recent survey of the vessel performed by Jonathan Sands on March 15, 2018 (hereinafter, "the Sands Report"). The

2

Sands Report is on record with this Court as Docket Entry #1-2. The Sands Report contained several pages noting vessel deficiencies, along with recommended remedial action. DE#1-2. The vessel deficiencies were broken down into multiple categories; Regulatory Risk Related (AA), Other Deficiencies (B), and Surveyor's Notes and Observations (C). DE#1-2, p. 27.

Finally, along with the application materials and the Sands Report, OPENWATER submitted to GLI a Letter of Compliance, executed by Evan Genaud, certifying that all the recommendations in the Sands Report "have been complied with." The Letter of Compliance is on record with this Court as Docket Entry #9-2.

Based on the material facts disclosed in the application and the Letter of Compliance, and in reliance on OPENWATER's duty under federal admiralty law to truthfully disclose all material facts to the underwriter (*uberrimae fidei*), GLI made the decision to issue the policy of marine insurance. DE#9-2, DE#9-3, *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 822 F.3d 620; 2016 A.M.C. 1217 (C.A.2.2016), *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715; 2015 A.M.C. 2113 (C.A.8.2015), *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69; 2015 A.M.C. 694 (C.A.1.2015), *HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359; 2000 A.M.C. 1817 (C.A.11.2000).[1]

The policy form detailing the risks insured against, the risks specifically excluded, and the warranties, terms, and conditions (PYP/5/COM) also contained verbiage relevant to those

---

[1] Just to clear up any continuing confusion for opposing counsel, the declarations page of the policy of marine insurance contained the heading, "Temporary Binder". DE#9-3. As suggested by the use of the word "temporary", this document was issued immediately, and on a short-term basis, until a permanent declarations page could be issued. The Temporary Binder contained all the identifying information relevant to the risk insured; (1) the policy number, (2) the name of the insured, (3) the name of the insured's agent, (4) the name of the insured vessel, (5) the period of coverage, (6) the coverage limits, (7) the named operators approved based on the facts disclosed in the application, (8) the lay-up period, (9) the navigational limits, (10) the insurance provider, and (11) the name of the policy form which detailed the terms, conditions, and risks insured against, PYP/5/COM. DE#9-3.

individuals authorized to operate the vessel.  DE#9-3.  PYP/5/COM stated, "It is ***warranted*** that the Scheduled Vessel will be operated only by covered persons.  However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters.  Such approval not to be unreasonably withheld."  DE#9-3, p. 15 [emphasis added].  The policy defined "covered person" as "you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel."  DE#9-3, p. 4.  The policy defined "operate", "operation", and "operating" as "to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel."  DE#9-3, p. 5.

On April 29, 2018, the vessel insured under the policy suffered a loss when its mast came down.  DE#1, p. 6.  Following first receipt of notice of the loss, GLI caused a full investigation to be conducted into the causes and circumstances of the loss.  DE#9, p. 9.  In the course of that investigation, GLI learned that no fortuitous event caused the dismasting.  DE#9.  In the course of that investigation, GLI also learned that numerous deficiencies noted in the Sands Report had not been corrected as certified in the Letter of Compliance.  DE#9.  Therefore, based on these facts, GLI denied coverage for the dismasting.

Following the denial of coverage, OPENWATER filed the above captioned action, alleging that the policy of marine insurance issued by GLI, CSRYP/167347, afforded coverage for the dismasting.  DE#1.  While answering OPENWATER's complaint, GLI also filed a counterclaim with three causes of action asserting three separate bases for the denial of OPENWATER's claim.

4

DE#9.  First, GLI asserted that the dismasting was not caused by a fortuitous event as required by the terms of the policy and by federal admiralty law.  DE#9, p. 9.  Second, GLI asserted that there could be no coverage for the dismasting because, contrary to the certification in the Letter of Compliance, not all the recommendations in the Sands Report "ha[d] been complied with".  DE#9, p. 11.  Third, GLI asserted that OPENWATER breached the duty of utmost good faith by failing to disclose that not all the recommendations in the Sands Report "ha[d] been complied with", and that this misrepresentation of material facts voided the policy of marine insurance from its inception under the federal admiralty law doctrine of *uberrimae fidei*.  DE#9, p. 13.

Discovery in this matter commenced following this Court's dismissal of all claims against GLI's agent, Concept Special Risks, Ltd., and the issuance of a scheduling order on January 23, 2019.  DE#57.  Pursuant thereto, the parties deposed two individuals from July 16, 2019 to July 18, 2019; John Gordon (the surveyor who examined the vessel after the loss) and Evan Genaud.

In the course of his deposition, Evan Genaud (hereinafter "Genaud") admitted facts relevant to a new cause of action.  The relevant portions of the transcript of Genaud's deposition are attached hereto as Exhibit 1.  Specifically, Genaud admitted that an individual not disclosed on the application and not named on the Temporary Binder, Jean Pierre Tailor Rojas Yupanqui (hereinafter "Yupanqui"), operated the vessel on multiple occasions prior to the loss that is the subject of this suit.  Ex 1, p. 43. Specifically, Genaud testified that Yupanqui, who was employed aboard the vessel as a mate, operated the vessel's wheel, operated the vessel's throttle, and was at the helm of the vessel on multiple occasions.  Ex 1, p. 44.  Moreover, Genaud conceded that Yupanqui was at the helm of the vessel at the time of the dismasting that is the subject of the present suit.  Ex 1, p. 45.

As detailed above, policy form PYP/5/COM contained very precise verbiage with respect to the operation of the vessel. PYP/5/COM stated that "[i]t is ***warranted*** that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters. Such approval not to be unreasonably withheld." DE#9-3, p. 15 [emphasis added]. PYP/5/COM defined "covered person" as "you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel." DE#9-3, p. 4. PYP/5/COM defined "operate", "operation", and "operating" as "to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel." DE#9-3, p. 5.[2]

Based on these facts admitted by Genaud, GLI concluded that OPENWATER breached the policy's Named Operator Warranty because it allowed Yupanqui to "operate" the vessel as that term is defined in the policy. OPENWATER allowed Yupanqui to operate the wheel and the

---

[2] Although it is not directly relevant to the present motion, it should be noted that it seems to be OPENWATER's contention throughout this litigation that it never received a copy of the PYP/5/COM. Whether this is true or false is irrelevant for several reasons. First, under federal admiralty law, New York law, and Colorado law, coverage cannot be created or broadened by estoppel. *St. Paul Fire and marine Ins. Co. v. Vest Transportation Co., Inc.*, 666 F.2d 932, 947 (C.A.5.1982), *Commercial Union Ins. Co. v. Roxborough Village Joint Venture*, 944 F.Supp. 827, 837 (D.Colo.1996), *Ward v. County of Allegany*, 34 A.D.3d 1288, 1290 (N.Y.S.2d.2006). Since PYP/5/COM is the only document which details the risks insured against, nullifying this document would necessarily result in there being no coverage. Second, even if PYP/5/COM was never received by OPENWATER, it was certainly received by OPENWATER's agent, MARITIME PROGRAM GROUP, INC. Attached hereto as Exhibit 2 is a copy of the "Concept Special Risk Limited – US Operating Instructions" executed by MARITIME PROGRAM GROUP, INC. on March 2, 2015. It states that MARITIME PROGRAM GROUP is the agent of the insured; in this case, OPENWATER. Ex 1, p. 1. It further states that execution of the document by MARITIME PROGRAM GROUP, INC. is confirmation that MARITIME PROGRAM GROUP, INC. is aware of and has read all standard insuring agreement wordings. Ex 1, p. 1. Under Colorado law, the knowledge of an agent is imputed to the principal. *In re Stat-Tech Securities Litigation*, 905 F.Supp. 1416 (D.Colo.1995).

throttle multiple occasions. In addition, Yupanqui was at the helm of the vessel when the dismasting occurred. This conduct, singly and in combination, breached the policy's Named Operator Warranty.

In addition, the failure to disclose the identity and qualification of Yupanqui on the application for insurance was a breach of OPENWATER's duty under federal admiralty law to voluntarily disclosure all facts material to the proposed risk. DE#9-1. Specifically, OPENWATER did not disclose the identity of Yupanqui, his driving record, his boating experience and qualification, his loss history, nor whether he had any record of criminal convictions. DE#9-1.

Therefore, GLI presently moves that this Court allow the filing of an amended counterclaim to add two new bases for the denial of OPENWATER's coverage claim.

## Argument

Federal Rules of Civil Procedure 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). In the present matter, the undersigned counsel for GLI has conferred with counsel for OPENWATER and confirmed that OPENWATER opposes the filing of an amended counterclaim by GLI. Therefore, in accordance with Fed.R.Civ.P. 15(a)(2), GLI asks this Court's leave to file an amended counterclaim.

"In the absence of any apparent or declared reason, such as undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment, leave to amend should, as the rule requires, be freely given." *Beckett v. Continental Western Ins. Co.*, 217 F.R.D. 541, 543 (D.Kan.2003), *citing*, *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962), *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (C.A.10.1993). For instance, the case of *The Standard Fire Ins. Co. v. Donnelly* arose out of a policy of liability insurance covering an insured who was accused of trespass and vandalism on another's property. 689 F.Supp.2d 696 (D.Vt.2010).  After the insured was sued, the insurer filed a declaratory judgment action alleging that there was no coverage for the alleged liability.  *Id*, at 698.  Eight months later, the insurer moved to amend its complaint to add allegations that that coverage was specifically excluded and that the insured breached certain requirements of the policy.  *Id*, at 699. First, the court noted that delay alone, without a showing of bad faith or ***"substantial"*** undue prejudice, would not provide a basis for denying a motion to amend.  *Id*, at 700 [emphasis in original].  Following this rule, the court noted that even an unexplained delay of eight months, without more, would not support the denial of a motion to amend.  *Id*.  Therefore, since discovery was still ongoing and the opposing party could make no showing of substantial undue prejudice, the court granted the motion and allowed the filing of an amended pleading by the insurer.  *Id*.

To give another example, the case of *Cummins v. EG & G Sealol, Inc.* was a discrimination suit brought by a terminated employee whose first complaint alleged that he was fired from his job on account of his age.  690 F.Supp. 134, 135 (D.R.I.1988).  However, in the course of discovery, the terminated employee uncovered evidence indicating a second reason for his firing, that he was terminated in retaliation for threatening to reveal his employer's use of inflated prices on certain defense contracts.  *Id*.  Noting that the terminated employee "promptly filed his motion to amend" after discovering new evidence, the court allowed the motion and held that, whatever speculative prejudice might result could be alleviated by merely extending the discovery deadline.

The allowance of amendments under Fed.R.Civ.P. 15 is so liberal that, where new evidence is found during discovery, amendment should be allowed even after the court's own deadline for filing amended pleadings has passed. *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F.Supp.2d 430 (D.Del.2003). Just like the present case, the *Calloway* case concerned new evidence which the defendant only became aware of during discovery. *Id*, at 433. Notwithstanding the plaintiff's objections that the deadline for amending pleadings had passed, the court in *Calloway* granted the motion because discovery was far from complete and Rule 15 embodies a very liberal policy of amendment. *Id*.

The liberality of Rule 15 is further illustrated by the rare example of a court denying a motion to amend. *Phoenix Technologies, Inc. v. TRW, Inc.*, 154 F.R.D. 122 (E.D.Penn.1994). The *Phoenix* case arose out of a complaint first filed by the plaintiff in October 1992. *Id*, at 123. Despite a discovery cut-off in August 1993, the court allowed the Defendant to file an amended counterclaim in October 1993 adding allegations of fraud. *Id*. Then, in January 1994, with the plaintiff's summary judgment motion pending and with trial set for February 1994, the defendant filed another motion to amend so as to add a cause of action for negligent misrepresentation. *Id*. Noting that the facts supporting the new cause of action were identical to the facts supporting the old fraud claim, the court in the *Phoenix* case held that the delay in bringing the new cause of action on the eve of trial was clearly undue because it could have been brought five months before. *Id*. Therefore, since the delay was undue and the defendant could offer no good excuse for the delay, the court denied the defendant's motion to amend. *Id*, at 124.

In the present matter, the record shows that GLI learned about OPENWATER's failure to disclose Yupanqui and the breach of the named operator warranty in the ordinary course of

discovery only three weeks ago. As soon as GLI learned of the breach, and without any delay, GLI began the process of amending its complaint. First, without waiting for the deposition transcript, the undersigned counsel for GLI contacted counsel for OPENWATER and counsel for GOWRIE and asked if the motion to amend would be opposed. Then, after receiving their responses and still without waiting for the transcript of Genaud's depositions, the undersigned counsel prepared the present motion. As soon as the undersigned received the deposition transcript on Monday, August 5, the undersigned finalized the present motion and filed it with the Court. There can be no good faith basis for alleging that the undersigned counsel has delayed the filing of the present motion.

As for the impact on discovery, there can be no prejudice to the other parties because discovery is far from complete. Moreover, the opposing parties have not yet taken the deposition of GLI's 30(b)(6) witness, Beric Anthony Usher. At that deposition, they will be afforded an ample opportunity to question GLI's representative regarding the legal impact of a breach of warranty on a policy of marine insurance. Therefore, allowing GLI's amended counterclaim cannot possibly impose any discovery difficulties. Finally, as specifically noted in the *Cummins* decision, the ordinary and expected prejudice that results from the revelation of new evidence is no more than is to be expected in the ordinary course of discovery. *Cummins*, at 139.

Finally, it should be emphasized that, since OPENWATER opposes the present motion, GLI does not bear the burden of assuring this Court that there is no bad faith or undue prejudice. *Donnelly*, at 700. Rather, it is OPENWATER that bears the burden of showing that GLI's motion to amend should be denied for bad faith or undue prejudice. *Id*.

## **Conclusion**

For the foregoing reasons, GLI asks that this Court allow the filing of an amended counterclaim so that GLI can assert an additional basis for the denial of OPENWATER's claims under the disputed policy of marine insurance, that OPENWATER breached the policy's named operator warranty. This assertion is based on evidence newly revealed in discovery only three weeks ago. In support of the present motion, a draft of the proposed amended complaint is attached as Exhibit 3.

WHEREFORE, GLI asks this this Court allow the filing of an amended counterclaim, and award all such further relief as may be appropriate in the premises.

Respectfully submitted, this 7th day of August, 2019.

ATTORNEYS FOR GREAT LAKES
INSURANCE SE

| McCONAUGHY & SARKISSIAN, P.C. | GOLDMAN & HELLMAN |
|---|---|
| By: /s/ Elizabeth C. LaVance | By: /s/ Michael I. Goldman |
| Ivan A. Sarkissian, CO Bar No. 28817 | Michael I. Goldman, MA Bar No. 677362 |
| Elizabeth C. LaVance, CO Bar No. 50751 | Goldman & Hellman |
| 8310 South Valley Highway, Suite 250 | 233 Harvard Street, Suite 211 |
| Englewood, Colorado 80112 | Brookline, MA 02446 |
| Tel: (303) 649-0999 | Tel: (617) 566-4200 |
| Fax: (303) 649-0990 | Fax: (617) 566-4292 |
| Email: sarkissian@mslawpc.com | Cel: (617) 320-9854 |
| Email: elavance@mslawpc.com | Email: michael@goldmanandhellman.com |

## CERTIFICATE OF SERVICE

 I hereby certify that on August 7, 2019, I electronically filed the foregoing GREAT LAKES INSURANCE SE'S MOTION TO AMEND ITS COUNTERCLAIM UNDER FEDERAL RULES OF CIVIL PROCEDURE 15 with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Oertli, #24926
24800 Squaw Pass
Evergreen, CO 80439
T: 720-799-5217
E: dickoertli@gmail.com
Counsel for Openwater Safety IV, LLC

                /s/ Michael I. Goldman, Esq.

## CERTIFICATE OF COMPLIANCE

 I hereby certify that on August 7, 2019, I conferred with counsel for all opposing parties regarding their opposition to the present motion. OPENWATER SAFETY IV, LLC opposes the present motion. Counsel for OPENWATER SAFETY IV, LLC stated as follows, "I will oppose the motion for several reasons, including: It would be way out of time; Operator was not defined; Great Lakes knew from the Emergency log, which was provided within a few days of the dismasting, that Pierre was at the helm (and Giovanni was five feet away) and Great Lakes could have added the Operator issue as an alleged misrepresentation long ago; Pierre was part of a transit crew and Mr. Genaud would have advised Great Lakes about the permanent crew and their roles after the Vessel reached its destination; when Mr. Genaud observed Pierre at the helm, Mr. Genaud did not own the Vessel, etc."

MARK GARGULA, GOWRIE GROUP, INC., and MARITIME PROGRAM GROUP, INC. take no position on the present motion.

                /s/ Michael I. Goldman, Esq.