# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01400-NYW

OPENWATER SAFETY IV, LLC,

      Plaintiff,

v.

GREAT LAKES INSURANCE SE,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on the following motions:

(1) Plaintiff Openwater Safety IV, LLC's ("Openwater" or "Plaintiff") Motion for Summary Judgment on Great Lakes' Liability for Insurance Coverage ("Plaintiff's Motion for Summary Judgment"), [#94, filed July 12, 2019];

(2) Defendant Great Lakes Insurance, SE's ("Defendant" or "GLI") Motion to Amend its Counterclaim Under Federal Rules (sic) of Civil Procedure 15 ("Motion to Amend"), [#105, filed August 7, 2019]; and

(3) Defendant's Motion for Complete Summary Judgment Against Openwater Safety IV, LLC ("Defendant's Motion for Summary Judgment"), [#130, filed October 30, 2019].

The undersigned Magistrate Judge fully presides over this matter pursuant to the Parties' Consent [#24] and the Order of Reference dated August 14, 2018 [#25]. After carefully reviewing the Motion to Amend, Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment, the entire case file, and the applicable case law, the Motion to Amend is

**GRANTED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED with prejudice**.

## PROCEDURAL HISTORY

This civil action arises out of an insurance dispute. Plaintiff filed this suit on June 6, 2018 and asserted two claims for relief. *See generally* [#1]. Originally, Openwater sought a declaratory judgment under New York law to establish its entitlement to the insurance pay-out and Defendant's liability for bad faith denial of the insurance claim. [*Id.* at 9-12, ¶¶ 1-6]. Openwater also asserted a claim for breach of contract. [*Id.* at 12-13, ¶¶ 1-6]. On June 21, 2018, GLI filed a Counterclaim against Openwater. [#9]. Specifically, GLI sought a declaratory judgment to establish that Openwater (a) breached a Letter of Compliance Warranty; (b) misrepresented material facts on its application for insurance coverage; and (c) cannot show that the vessel suffered a "fortuitous" loss. *See* [*id.*].

On September 25, 2018, Openwater filed a Motion for Leave to File an Amended Complaint [#34], which this court granted in part and denied in part, *see* [#45, filed December 12, 2018]. Soon thereafter, Openwater filed an Amended Complaint against GLI wherein Openwater again (a) sought a declaratory judgment to establish its entitlement to the insurance pay-out and GLI's liability to provide insurance coverage for Openwater's loss, and (b) asserted a claim of breach of contract against GLI. [#49, filed December 17, 2018]. This court entered a Scheduling Order on January 23, 2019, setting a deadline for joinder of parties and amendment of pleadings for February 14, 2019. [#57 at 12].

On February 14, 2019, Openwater filed a Motion for Leave to File Second Amended Complaint. [#58]. Construing GLI's acquiescence to the proposed amendment as an amendment by consent under Federal Rule of Civil Procedure 15(a)(2) and D.C.COLO.LCivR 15.1(a), this

court granted Openwater leave to file a Second Amended Complaint. *See* [#61]. Openwater filed its Second Amended Complaint, asserting the same claims against GLI—seeking a declaratory judgment to establish its entitlement to the insurance pay-out and GLI's liability to provide insurance coverage for Openwater's loss and asserting a claim of breach of contract against GLI—on February 23, 2019. [#62]. Openwater also asserted claims against Mark Gargula, Gowrie Group, Inc., and Maritime Program Group, Inc., which were ultimately dismissed voluntarily by those Parties, leaving GLI as the sole defendant. [#138]. The Second Amended Complaint remains the operative pleading as to GLI in this case.

Plaintiff filed its Motion for Summary Judgment as to Great Lakes' Liability for Insurance Coverage on July 12, 2019. [#94]. GLI subsequently filed, and this court granted, an unopposed motion for an extension of time to respond to Plaintiff's Motion for Summary Judgment. [#95; #97]. On August 7, 2019, GLI filed the instant Motion to Amend/Correct/Modify its Counterclaim against Plaintiff, [#105], and Plaintiff filed its Response to Defendant's Motion to Amend on August 18, 2019, [#112]. The following day, GLI filed a Response to Plaintiff's Motion for Summary Judgment. [#113]. On August 30, 2019, Plaintiff filed its Reply in support of its Motion for Summary Judgment, [#119], and GLI filed a Reply in support of its Motion to Amend, [#118]. GLI filed the instant Motion for Summary Judgment on October 30, 2019. [#130]. Plaintiff filed a Response and GLI a Reply on December 5, 2019 and January 2, 2020, respectively. [#134; #144]. Because the Motions are now ripe, I consider the Parties' arguments below.

## BACKGROUND

This court has discussed in detail this action's background in previous rulings. *See, e.g.*, [#45; #102]. This case arises from a maritime dismasting occurring off the coast of Colombia and involves the vessel's owner, Plaintiff, and its insurer, Defendant. *See* [#62]. This court draws the

following material facts from the record. These material facts are undisputed unless otherwise noted.

In 2018, Openwater purchased the *Heavan* (the "vessel"), a Lagoon 52F catamaran, and retained Jonathan Sands ("Mr. Sands"), a Naval Architect, Marine Engineer, and Professional Marine Surveyor, to conduct a post-purchase inspection. [#45 at 2]. In March or April 2018,[1] Openwater submitted an application for insurance coverage of the vessel to GLI. [#94-4; #130-4]. Included in the submission were three documents: (1) a completed application form; (2) an executed Letter of Compliance ("LOC"); and (3) a Report of Survey completed by Mr. Sands and based on his March 15, 2018 survey of the vessel (the "Sands Report"). [#94; #94-3; #94-4; #94-5; #113 at 2].

The application disclosed (a) that Openwater was seeking $780,000 in "first-party property damage coverage" for the vessel, (b) that Openwater intended to employ two crew members, and (c) two operators of the vessel: Evan-Pierre Bernard Genaud ("Mr. Genaud") and Manuel Giovanni Cardenas Martinez ("Mr. Martinez"). [#94-3; #113-1; #130-4]. The application form included the following language, "**WARNING: THIS IS A NAMED OPERATOR ONLY POLICY**". [#113-1 at 7 (emphasis in original)].

On April 6, 2018, and based on the representations made in the application form, LOC, and Sands Report, GLI issued an insurance policy to Openwater for the vessel and provided Openwater with a Temporary Binder.[2] [#94 at 3; #94-4; #113 at 4]. The Temporary Binder did not include:

---

[1] Plaintiff and Defendant identify the date of Openwater's submission of the documents to GLI as "late March of 2018" and "April 2, 2018", respectively. *Compare* [#94 at 3] *with* [#113 at 1]. The Parties' dispute over the precise timing of the application is immaterial to the instant Motions.

[2] A Temporary Binder is a short-term insurance policy that an insurance company issues as a temporary measure until a more formal arrangement is reached. *Springer v. Allstate Life Ins. Co. of New York*, 731 N.E.2d 1106, 1108 (N.Y. 2000).

(a) any statement of the risks the policy insured against; (b) a definition of any words of the policy; (c) a statement of the applicable terms and conditions; (d) a statement of the insured's rights and duties; or (e) information about particular losses that are or are not covered under the policy.[3] [#94-4; #113-5]. It is undisputed that the Temporary Binder, among other information, did identify the insurer (GLI), the insured (Openwater), the vessel ("Heavan, 2013 52' Lagoon"), the policy number (CSRYP/167347), the period of coverage (April 7, 2018 through April 7, 2019), the named operators (Evan-Pierre Bernard Genaud; Manual Giovanni Cardenas Martinez), and the Insuring Agreement Wording ("As per PYP/5/COM"). [#94-4; #113-5; #119 at 7]. The Temporary Binder also stated, "For more information regarding . . . policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com." [#94-4; #113-5; #119 at 7]. While Plaintiff disputes receiving the Insuring Agreement prior to the dismasting, [#105 at 6 n.2; #112 at 15], the undisputed evidence in the record establishes that PYP/5/COM is available for download directly from www.special-risks.com, *see* [#130 at 5; #130-9 at 2]. This court further confirmed at the Final Pretrial Conference that while Plaintiff disputes whether it received a copy of PYP/5/COM prior to the loss, it does not dispute the language of that Agreement. [#149 at 1].

PYP/5/COM states in relevant part:

- "'Covered person' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel." [#113-7 at 1].

---

[3] The Parties appear to disagree as to the proper interpretation of coverage under the Temporary Binder, *see, e.g.*, [#119 at 8–9], but because contract interpretation is a matter of law for the court to determine, this court is guided by the language of the document rather than the Parties' respective characterizations.

- "'Operate, operation, operating' means to navigate or be in physical control of or at the helm of the Scheduled Vessel." [*Id.* at 2].

- "[GLI] provide[s] coverage for accidental physical loss of or physical damage to the Scheduled Vessel . . . subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions." [*Id.*].

- "It is warranted that the Scheduled Vessel will be operated only be covered persons. . . ." (the "Named Operator Warranty") [*Id.* at 12].

- "Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception." [*Id.*].

- "**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**" [*Id.* at 14 (emphasis in original)].

On April 28 or 29, 2018,[4] the mast of the vessel came down while traveling off the coast of Colombia. [#94 at 3; #113 at 9].[5] An Emergency Log prepared by Mr. Genaud and detailing the incident was provided to GLI shortly thereafter. [#112-1; #134 at 1–2; #134-2]. In relevant

---

[4] Plaintiff and Defendant identify the date of the dismasting as April 29 and April 28, 2018, respectively. [#94 at 3; #113 at 9]. As with the precise date of the submission of the application, the Parties' dispute over the precise timing of the application is immaterial to the instant Motions.

[5] All witnesses to the event have disappeared and are thus unavailable to be deposed or to give admissible evidence regarding the dismasting. [#130 at 7]. The Emergency Log, discussed *infra*, is the only record of the events leading up to and including the dismasting incident.

part, the Emergency Log identifies three crew members on board the vessel at the time of the incident: Manuel Giovanni Cardenas Martinez ("Mr. Martinez"), Jean-Pierre Tailor Rojas Yupanqui ("Mr. Yupanqui") and David Caro Correa ("Mr. Correa"). [#112-1 at 1]. The Emergency Log also states that "[t]he watchman on duty at the time was mate Jean-Pierre [Yupanqui]. David and Giovanni were sitting outside on the aft deck at the coffee table. [. . . ] The watchman Jean-Pierre [Yupanqui] was on the flybridge and had to jump to save his life when the mast fell down." [*Id.*].

The dismasting caused extensive damage to the vessel. [#94 at 3]. Following the dismasting, Openwater filed a claim with GLI. [*Id.*]. GLI denied the claim on multiple bases. [*Id.*]. Subsequently, Openwater filed the instant action. *See* [#1].

In July 2019, Mr. Genaud testified during his deposition that Mr. Yupanqui was at the helm of the vessel at the time of the dismasting and explained that to be "at the helm" meant that Mr. Yupanqui was operating the wheel and throttle of the vessel at the time of the incident. [#113-13 at 45:9-46:6].[6] Based on the foregoing information discovered during Mr. Genaud's deposition, GLI filed the instant Motion to Amend. Before I turn to the merits of the Motion to Amend, I consider the preliminary matter of the applicability of federal admiralty law and the choice of law provision in the Insuring Agreement to the instant action.

---

[6] Openwater challenges GLI's characterization of Mr. Genaud's testimony. *See* [#134 at 1 ("There is no evidence that [Mr. Yupanqui] operated the Vessel, its wheel, or its throttle while the Vessel was owned by Openwater. None.")]. But Mr. Genaud unequivocally testified that Mr. Yupanqui was helming the boat at the time that the mast came down, which meant that he was "operating the wheel and throttle." [#130-3 at 45:946:6]. And at summary judgment, a party cannot dispute a fact supported by the record by mere attorney argument, *Baxa Corp. v. McGaw, Inc.*, 996 F. Supp. 1044, 1051 (D. Colo. 1997), *aff'd sub nom. Baxa Corp. v. Excelsior Med. Corp.*, 185 F.3d 883 (Fed. Cir. 1999), but rather must come forward with admissible evidence to dispute a fact. *See Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

**CHOICE OF LAW**

"Since the insurance policy here sued on is a maritime contract[,] the Admiralty Clause of the Constitution brings it within federal jurisdiction." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955); *see also The Belfast*, 74 U.S. 624, 641-42 (1868) (rejecting the argument that federal admiralty jurisdiction over maritime contracts is limited by the Commerce Clause); *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F. Supp. 2d 1193, 1197 (W.D. Okla. 2009) ("An ocean marine insurance policy is governed by federal admiralty law."). With admiralty jurisdiction comes the application of substantive admiralty law and, without a statute on point, the general maritime common law applies. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986); *Diesel "Repower", Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001). Even when the court has concurrent diversity jurisdiction and admiralty jurisdiction, federal maritime law governs. *Pope & Talbot v. Hawn*, 346 U.S. 406, 410-11 (1953) (rejecting application of state law and the *Erie* doctrine in cases of concurrent admiralty/diversity jurisdiction); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990); *Butler v. Am. Trawler Co.*, 707 F. Supp. 29, 31 (D. Me. 1989) (applying federal maritime law when Plaintiff brought state-law diversity action and did not designate the action as maritime under Fed. R. Civ. P. 9(h)).

Federal maritime law generally enforces contractual choice-of-law provisions. *Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 413 (4th Cir. 2009); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). Plaintiff also challenges the applicability of the choice of law clause in the Insuring Agreement between the Parties. Specifically, Plaintiff claims that New York law does not apply because it "never agreed to the application of New York law." [#94 at 7]. But as this court previously explained,

8

> Openwater cannot accept and interpret the documents that lie at the core of its claims in its favor and then repudiate them when inconvenient. Therefore, this court finds [again] that despite Plaintiff's insistence that Openwater received *no* insurance policy, the Temporary Binder and the Insuring Agreement comprise the insurance policy central to its claims.

[#45 at 10 (citations omitted) (emphasis in original)]. And here, the choice of law provision in the Insuring Agreement provides that:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

[#130-10 at 14].

As previously noted, under federal admiralty law a court will generally enforce choice-of-law provisions. *See Triton Marine*, 575 F.3d at 413. Here, the choice of law provision provides that "any dispute" arising from the Insuring Agreement is governed either by federal admiralty law or the substantive law of the State of New York. [#1-6 at 14]. Plainly, this clause encompasses all potential theories or claims arising from the insurance contract. And all of Plaintiff's claims, and Defendant's counterclaims, arise from the Parties' performance under the insurance contract and subsequent coverage dispute.

Because the parties had "not substantively briefed [the choice of law] issue," in connection with Plaintiff's Motion for Leave to File an Amended Complaint [#34] or (now terminated) Defendant Concept Special Risk Ltd's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Incorporated Memorandum of Law [#26], this court made "careful note of the fact that nothing in [its #45] Order shall be construed as addressing the choice of law question in this case in any other context, including but not limited to subsequent Rule 12 and Rule 56 motions." [#45 at 8]. Thus, this court made clear to the Parties that the choice of law remained at issue for any future dispositive motions.

Yet Plaintiff, in its instant Motion for Partial Summary Judgment, elected *not* to substantively brief the choice of law issue. Instead, Plaintiff merely "respectfully disagrees with the Court's conclusion in its Order of December 12, 2018 that New York law applies," and promises to "brief the choice of law issue if the Court deems it necessary." [#94 at 7]. Plaintiff has thus waived its choice of law arguments. *See, e.g.*, *Skepnek v. Roper & Twardowsky, LLC*, No. 11-cv-4102-DDC-JPO, 2015 WL 4496301, at *12–13 (D. Kan. July 23, 2015) (finding that plaintiffs waived their choice of law arguments when they included only a perfunctory acknowledgement of their position on the issue in their summary judgment brief).

In Defendant's Response to Plaintiff's Motion for Summary Judgment, it argues that "for any issue not governed by an established rule of federal admiralty law, New York law will apply." [#113 at 12]. In light of the choice of law provision in the Insuring Agreement and the foregoing case law, this court agrees with Defendant and concludes that (1) federal admiralty law applies, and (2) where there is no applicable federal admiralty law, New York state law shall govern the Parties' claims in this case. I turn now to the merits of the pending motions.

## MOTION TO AMEND

GLI seeks to add two new counterclaims for Openwater's alleged breach of a Named Operator Warranty found in the marine insurance policy and breach of applicable principles of federal admiralty law. *See* [#105; #105-3]. GLI argues that its proposed amendment is timely and appropriate because the new counterclaims are based on information discovered during a July 17, 2019 deposition of Mr. Genaud, wherein Mr. Genaud testified that Mr. Yupanqui had operated the vessel on numerous occasions and was "at the helm" of the vessel when the dismasting occurred. *See* [#105]. Based on this new information, GLI subsequently concluded that—by allowing Mr. Yupanqui, an unnamed operator, to operate the vessel—Openwater breached both an express

warranty of the policy and duties imposed by federal admiralty law. Openwater opposes GLI's Motion to Amend. For the following reasons, I find that the proposed amendment is timely pursued, that GLI was diligent in filing the instant Motion, and that Openwater has failed to meet its burden of showing that amendment would be futile or would cause substantial prejudice, undue delay, or injustice.

## I.     Background

This case proceeded to a Scheduling Conference on January 23, 2019 after several unrelated delays. *See* [#56]. The Scheduling Order provided that the deadline to seek joinder of parties or amendment of pleadings was February 14, 2019. [#57]. Subsequently, the Parties sought several different extensions of time and modifications to the Scheduling Order. *See* [#71; #76; #78; #95; #132; #136; #146]. None of these, however, dealt with the deadline to amend pleadings. *See* [#71; #76; #78; #95; #132; #136; #146]. On August 7, 2019, GLI filed the instant Motion to Amend its Counterclaim Under Federal Rules [sic] of Civil Procedure 15. *See* [#105].

## II.     Legal Standard

The deadline to amend pleadings has long since passed, and accordingly, this court must engage in a two-step analysis in determining whether amendment at this juncture is proper under both Rule 16(b)(4) and Rule 15 of the Federal Rules of Civil Procedure, rather than a single-tiered analysis under Rule 15(a) as advocated by GLI. *Compare* [#105] *with Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Pacific Specialty Ins. Co. v. Poirer*, 18-cv-00880-NYW, 2019 WL 2912511 (July 8, 2019) (applying the two-step analysis to determine whether amendment was proper). Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the

movant's] diligent efforts.'" *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). "This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed." *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases. *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).

A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004); *see, e.g., id.* (futile because claim was subject to statute of limitations); *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (futile for failure to allege all elements of cause of action); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1200 (10th Cir. 2006) (futile because amended claim would seek relief barred by statute). In considering whether an amendment is futile, courts apply the same standard used to evaluate a claim under Rule 12(b)(6), accepting well-pleaded facts as true and reviewing solely to determine if the Complaint states a plausible claim for relief as amended. *Weingarden v.*

*Rainstorm, Inc.*, No. 09-2530-JWL, 2012 WL 13026753, at *1 (D. Kan. July 12, 2012). The decision to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996). The non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice. *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009).

### III. Analysis

As explained above, whether amendment is appropriate in this case turns on a two-part analysis. First, because the deadline for amendment of pleadings as contemplated by the Scheduling Order has long since passed, I consider GLI's diligence under Rule 16(b). For the reasons that follow, I find that the proposed amendment is timely pursued. Accordingly, I turn next to the second part of the two-step inquiry; that is, I consider whether Openwater, as the non-moving party, has met its burden of showing that amendment would be futile or would cause substantial prejudice, undue delay, or injustice under Rule 15.

***Diligence of GLI under Rule 16(b).*** "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad.*, 194 F.R.D. at 687. In its effort to demonstrate due diligence, GLI explains that: (1) it learned of Openwater's failure to disclose that Mr. Yupanqui was operating the vessel in violation of the Named Operator Warranty during a deposition of Mr. Genaud, only three weeks prior to filing the instant Motion to Amend and in the ordinary course of discovery; (2) immediately after learning of Openwater's breach of the Named Operator Warranty, GLI contacted Openwater for conferral on the instant Motion; (3) after conferral with Openwater and while still waiting for the

13

transcript of Mr. Genaud's depositions, defense counsel prepared the instant Motion; and (4) upon receipt of Mr. Genaud's deposition testimony transcript on August 5, 2019, defense counsel finalized the instant Motion and filed it with the court. *See* [#105 at 10].

In Response, Plaintiff challenges GLI's contention that it only learned of Openwater's breach of the Named Operator Warranty during Mr. Genaud's July 17, 2019 deposition. [#112]. Specifically, Plaintiff argues that GLI's Motion to Amend is "too late" because an Emergency Log (provided to GLI on May 2, 2018) stated that Mr. Yupanqui "was on the flybridge" at the time of the dismasting. [*Id.* at 2]. Although Plaintiff's argument on this point is not particularly cogent, this court interprets Plaintiff's argument to imply that Mr. Genaud's deposition testimony merely repeated the foregoing information provided to GLI in May 2018 via the Emergency Log and, therefore, that the "new information" discovered during Mr. Genaud's deposition does not support amendment.

As an initial matter, this court is puzzled by this argument because it seems contrary to Plaintiff's argument that there is no evidence that Mr. Yupanqui operated the vessel at all. *See* [#134 at 1]. The Emergency Log cannot simultaneously serve as affirmative notice to GLI that Mr. Yupanqui was operating the vessel sufficient to trigger GLI's obligation to amend its counterclaims, but provide "no evidence" to support the conclusion that Mr. Yupanqui was operating the vessel at the time of the dismasting. In addition, the fact that Mr. Yupanqui "was on the flybridge," without more, does not necessarily establish that he was "operating" the vessel as that term is contemplated by the Insuring Agreement. Indeed, until Mr. Genaud's deposition, "[a]ll GLI knew was that [Mr.] Yupanqui was present on the flybridge." [#118 at 2]. It "did not know if, due to his mere presence on the flybridge, [Mr.] Yupanqui was 'navigating' the vessel, in 'physical control' of the vessel, or 'at the helm' of the vessel." [*Id.*]. In contrast, Mr. Genaud's

deposition testimony provides a more robust explanation of Mr. Yupanqui's role on the vessel. For example, he testified that "Jean-Pierre [Yupanqui] was helming the boat" when the mast came down. [#130-13 at 45:9–46:3]. Immediately thereafter, defense counsel asked Mr. Genaud, "That means he was operating the wheel and the throttle?" [*Id.* at 46:4-5]. Mr. Genaud responded, "Yes." [*Id.* at 46:6]. Thus, Mr. Genaud's testimony confirms, in the first instance, that Mr. Yupanqui was "at the helm" of the vessel. Accordingly, I find Plaintiff's argument on this point unpersuasive; Mr. Genaud's deposition testimony did serve to disclose new information.

Because a movant's Rule 16(b) "burden is satisfied . . . when a party learns of new information in a deposition," *Gorsuch*, 771 F.3d at 1240, and in light of GLI's filing of the instant Motion within three weeks thereafter, I "find[] that the amendment has been timely pursued with due diligence because Mr. [Genaud]'s deposition occurred on [July 17, 2019] and [GLI] thereafter promptly sought amendment on [August 7, 2019]." *Pacific Specialty Ins. Co.*, 2019 WL 2912511, at *2. Thus, I find that there is good cause for the modification of the Scheduling Order under Rule 16(b)(4). Accordingly, I turn next to whether GLI's proposed amendment is appropriate under the standards of Rule 15.

***Rule 15 analysis.*** Openwater, as the non-moving party, bears the burden of showing that GLI's proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay, or injustice. *See Corp. Stock Transfer, Inc.*, 663 F. Supp. 2d at 1061 (D. Colo. 2009). Yet, other than the timeliness arguments addressed above, Openwater's Response to the Motion to Amend primarily advances arguments more properly reserved for a motion for summary judgment.

For example, Plaintiff argues that the proposed amendment is futile because (a) the term "operator" is not defined in the Application; (b) Mr. Genaud's understanding of the term

"operator" is consistent with the definition used by the National Oceanographic Atmospheric Administration ("NOAA"), which defines an "operator" as a "master in charge" or "captain"; (c) Openwater had no intent to deceive GLI; and (d) "[t]here is no evidence that Pierre was acting as a co-captain or master in charge." [#112 at 11–12]. But the applicable standard here is whether, as amended, the counterclaim could survive a motion to dismiss under Rule 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the [non-movant]." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted). Accepting as true GLI's factual allegations regarding the Named Operator Warranty and the alleged breach of Openwater's duties as imposed by the express terms of the policy and applicable principles of federal admiralty law, as I must, I conclude that counterclaims IV and V could survive a motion to dismiss under Rule 12(b)(6).[7]

Plaintiff also argues that it would be prejudiced by the proposed amendment because the amendment "is based on speculation" and it is "too late for Openwater to retain an expert on the meaning of 'Operator' on the insurance application." [#112 at 12]. But expert testimony on the meaning of "operator" on the insurance <u>application</u>—in isolation—is inapposite. Again, Plaintiff chooses to ignore this court's previous holding that the Temporary Binder and Insuring Agreement comprise the insurance policy at issue in this case. Therein, the interpretation of term "operator" is a question of law, and is not susceptible to expert testimony. I therefore find that Plaintiff's argument falls far short of establishing that GLI's proposed amendment would cause Plaintiff substantial prejudice.

---

[7] A more robust analysis of GLI's breach of warranty claim and the federal admiralty law applicable thereto is included in Parts II and III of this court's consideration of Defendant's Motion for Summary Judgment, *infra*.

For the foregoing reasons, I find that Plaintiff has failed to meet its burden of showing that GLI's proposed amendment is futile or that it would cause substantial prejudice, undue delay, or injustice. Accordingly, GLI's Motion to Amend is **GRANTED**.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.     Background**

Defendant asserts five counterclaims against Openwater and seeks a declaratory judgment to establish that Openwater (a) breached the Named Operator Warranty; (b) breached a Letter of Compliance Warranty; (c) misrepresented material facts on its application for insurance coverage; and (d) cannot show that the vessel suffered a "fortuitous" loss. *See* [#105-3; #130 at 26]. Each of the foregoing counterclaims, if successful, would individually and collectively void the insurance policy at issue in this case. For the reasons set forth below, I conclude that Defendant's Motion for Summary Judgment as to its counterclaim that Openwater breached the Named Operator Warranty should be **GRANTED**, thereby rendering the insurance policy at issue in this case void. Accordingly, I do not substantively discuss GLI's remaining arguments for summary judgment in its favor.[8]

**II.    Legal Standards**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty*

_____

[8] This court notes, however, that it would reach the same conclusion (that Openwater's conduct rendered the insurance policy void) on each of GLI's remaining counterclaims.

*Lobby*, 477 U.S. 242, 249 (1986)). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). In other words, a fact is "material" if it pertains to an element of a claim or defense and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1987) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). And the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

## III.     Analysis – Breach of the Named Operator Warranty

GLI argues that summary judgment in its favor is warranted because Openwater breached the "Named Operator Warranty" provision in the underlying Insuring Agreement. *See* [#130]. GLI argues that "it makes no difference whether this Court applies federal admiralty law or state law and the Plaintiff in this matter can choose his poison," because both New York and federal admiralty law strictly construe express warranties in marine insurance policies.

As explained above, before the court applies state law, it must first consider whether a well-established, entrenched principle or precedent of substantive United States Federal Admiralty law

18

and practice applies. But here the court does "not need to determine whether to apply federal or state law in this instance because both sources of law lead to the same rule: that marine insurance policy warranties are to be strictly construed." *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 787 F.3d 1001, 1004 (9th Cir. 2015).

The rule pursuant to federal admiralty law, if one exists,[9] is that breach of a warranty in a marine insurance policy constitutes an absolute bar to coverage—notwithstanding that the loss was not caused by the breach. *See Maclean v. Travelers Ins. Co.*, 299 F. Supp. 3d 231 (D. Mass. 2017) (applying federal admiralty law and granting marine insurer's motion to dismiss after finding that the insured breached a named operator warranty, despite the fact that breach played no role in the loss); *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 396 F. Supp. 3d 1170, 1177 (S.D. Fla. 2019) (applying a "well-entrenched" federal admiralty law that "all express warranties in maritime contracts are to be strictly construed."); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988) ("[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss"); *Aguirre v. Citizens Cas. Co. of New York*, 441 F.2d 141, 143–45 (5th Cir.), *cert. denied*, 404 U.S. 829 (1971) (applying "solidly entrenched" federal admiralty law and concluding that the "owners' breach of their express warranty . . . suspended coverage under the insurance policy."); *Home Ins. Co. v. Ciconett*, 179 F.2d 892 (6th Cir. 1950) (applying admiralty law and concluding that "[i]t is settled that a warranty in a contract of insurance must be literally complied with; that

---

[9] "In *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, the Supreme Court declared that no established federal rule addressed marine insurance policy warranty clauses, and that the clauses should be interpreted using state law. 348 U.S. at 314-16, 75 S. Ct. 368. Since *Wilburn Boat*, however, a few circuits have announced that 'federal rule' as identified above." *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 787 F.3d 1001, 1004 n.1 (9th Cir. 2015). The Tenth Circuit has neither announced nor disclaimed such a federal rule.

the only question in such cases is whether the thing warranted to be performed was or was not performed; and that a breach of the warranty releases the [insurer] from liability regardless of the fact that a compliance with the warranty would not have avoided the loss." (collecting cases)).

New York law requires strict compliance with express warranties in marine insurance contracts and provides that "the breach of an express warranty [in a marine insurance policy], whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy and the assured forfeits his rights under it." *Cogswell v. Chubb*, 36 N.Y.S. 1076, 1077 (1st Dept. 1896). *See also Ins. Co. of North Am. v. Zaglool*, 526 F. Supp. 2d 361, 367– 78 (E.D.N.Y. 2007) (applying New York state law and holding that breach of named operator warranty precluded coverage); *Gfroerer v. Ace Am. Ins. Co.*, 2004 WL 2966173, at *4 – 5 (W.D.N.Y. 2004) (applying New York law and finding that breach of a "named operator" warranty voided coverage for marine vessel accident), *aff'd*, 184 Fed. App'x 26, 2006 WL 1427730 (2d Cir. 2006). Thus, under both federal admiralty law and New York state law, this court must strictly construe the express "Named Operator Warranty" in the Insuring Agreement.

GLI's application required that "ALL OPERATORS MUST BE DETAILED" and stated, "**WARNING: THIS IS A NAMED OPERATOR ONLY POLICY**". [#130-4 at 7 (emphases in original)]. Plaintiff's application for insurance coverage identified only two operators, Mr. Genaud and Mr. Martinez. [*Id.*]. Thus, the Temporary Binder issued by GLI to Openwater identified the only "Named Operators" contemplated by the policy: Mssrs. Genaud and Martinez. [#130-8]. For additional information on the policy, the Temporary Binder also directed Openwater to PYP/5/COM. Together, the Temporary Binder and PYP/5/COM (or "Insuring Agreement"), constitute the insurance policy at issue in this case.

Subsection "v" of the Insuring Agreement states that "[i]t is warranted that the Scheduled Vessel will be operated only by covered persons." [#130-10 at 12]. The Insuring Agreement defines "covered person" as "you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel." [*Id.* at 1]. "Operate, operation, operating," as defined by the Insuring Agreement, "means to navigate or be in control of or at the helm of the Scheduled Vessel." [*Id.* at 2]. And subsection "s" of the Insuring Agreement provides that

> [w]here any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

[*Id.* at 12].

GLI argues that Openwater breached the "Named Operator Warranty" on several occasions prior to the vessel's dismasting, thereby voiding the policy from its inception. Specifically, GLI points to deposition testimony of Mr. Genaud that identifies Mr. Yupanqui—importantly, not one of the two "Named Operators" contemplated by the policy—as the operator of the vessel on multiple occasions between issuance of the policy and the dismasting incident. [#130 at 9]. Moreover, argues GLI, Mr. Genaud admitted that Mr. Yupanqui was operating the vessel at the time of the dismasting. [*Id.*].

In Response, Plaintiff argues that "[t]here is no evidence that Jean Pierre [Yupanqui] operated the Vessel, its wheel, or its throttle while the Vessel was owned by Openwater. None." [#134 at 1]. Plaintiff continues that the "only evidence of what [Mr. Yupanqui] was doing at the time of the dismasting is in the Emergency Log[,]" which states that the "watchman [Mr. Yupanqui] was on the flybridge and had to jump to save his life when the mast fell down." [#134 at 1–2]. Additionally, Plaintiff argues that because the application form does not define the term

"operator," one of two definitions of the term should apply: (a) Mr. Genaud's personal understanding of the term, or (b) the National Oceanographic Atmosphere Administration's definition of the same. [*Id.* at 2].

Plaintiff appears to continue to argue that the Insuring Agreement is inapplicable, despite this court's previous ruling to the contrary. *See* [#45 at 11 ("[T]his court finds that despite Plaintiff's insistence that Openwater received *no* insurance policy, the Temporary Binder and Insuring Agreement comprise the insurance policy central to its claims.")]. This court has already "rejected Plaintiff's contention that Openwater is not bound by the Temporary Binder and Insuring Agreement." [*Id.*].

Upon review of the record, as discussed above, I find that Mr. Genaud's deposition testimony belies Plaintiff's contention that there is "no evidence" that Mr. Yupanqui operated the vessel in violation of the Named Operator Warranty. At his deposition, defense counsel asked Mr. Genaud the following question: "Who was at the helm [of the vessel] when the mast came down?" [#130-13 at 45]. Mr. Genaud responded that Mr. Yupanqui "was helming the boat." [*Id.*]. Defense counsel then asked whether this meant that Mr. Yupanqui was "operating the wheel and throttle" to which Mr. Genaud responded in the affirmative. [*Id.*]. Indeed, Mr. Genaud plainly testified that Mr. Yupanqui was "at the helm" of the boat on the day of the dismasting. And pursuant to the Insuring Agreement, which defines the terms of the policy and its coverage, "operate . . . means to navigate or be in control of or *at the helm* of the Scheduled Vessel." [#130-10 at 12 (emphasis added)]. Thus, it logically follows that regardless of whether the term "operator" was separately defined by the Insuring Agreement, that the individual who navigated or was in control of or at the helm of the Scheduled Vessel was the operator. Indeed, that definition is consistent with plain meaning of the word "operator." *See, e.g.*, *Operator*, Merriam-Webster Dictionary,

https://www.merriam-webster.com/dictionary/operator ("one that operates a machine or device") (last visited Jan. 24, 2020). *See also Operate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operate ("to perform a function : exert power or influence" or "to cause to function") (last visited Jan. 24, 2020); *Village of Bedford Park v. Expedia*, 876 F.3d 296, 304 (7th Cir. 2017) ("An operator could also be one who operates; or one who 'perform[s] a function' or 'exert[s] power or influence.'" (quoting Merriam-Webster Dictionary)). Accordingly, this court specifically interprets the term "operator" as "one who is navigating, in control of, or at the helm of the Scheduled Vessel."

Mr. Genaud is the only individual able to testify on this issue; it appears that it is undisputed that the other crew members aboard the vessel and witness to the dismasting have "disappeared." *Compare* [#130 at 7] *with* [#134]. Accordingly, I find that (1) GLI has met its burden of establishing that there is no genuine dispute of material fact to its counterclaim that Openwater breached the Named Operator Warranty, and (2) Openwater has failed to set forth specific facts establishing an issue most properly reserved for trial. Defendant's Motion for Summary Judgment is therefore **GRANTED**.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Plaintiff "requests that the Court declare that the Plaintiff's vessel was covered, and remains covered, by insurance provided by Great Lakes on and from the date of issuance of the [Temporary] Binder." [#94 at 1; #62 at 18]. As discussed above, this court concludes that, upon Openwater's breach of the Named Operator Warranty, the insurance coverage issued by GLI to Openwater was rendered void from its inception. In other words, this court finds that GLI is not liable for insurance coverage of Openwater's vessel.[10]

---

[10] Necessarily, this conclusion also decides Plaintiff's breach of contract claim against GLI; because the policy was rendered void from its inception, there was no contract for GLI to breach.

Accordingly, Plaintiff's Motion for Summary Judgment on Great Lakes' Liability for Insurance Coverage is **DENIED with prejudice**.


**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)      Defendant's Motion to Amend [#105] is **GRANTED**;

(2)      Defendant's Motion for Summary Judgment [#130] is **GRANTED**;

(3)      Plaintiff's Motion for Summary Judgment [#94] is **DENIED with prejudice**;

(4)      Defendant, as the prevailing party, shall be awarded its costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1; and

(5)      The Clerk of the Court shall **TERMINATE** this matter, and **VACATE** all deadlines and dates associated with this action, including the trial date of June 15, 2020.


DATED: January 24, 2020           BY THE COURT:

Nina Y. Wang
United States Magistrate Judge