**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
IN ADMIRALTY**

CASE NO. 18-CV-1400-NYW

OPENWATER SAFETY IV, LLC,

Plaintiff/Counter-Defendant,

v.

GREAT LAKES INSURANCE SE,
Defendant/Counter-Plaintiff.
_____/

**GREAT LAKES INSURANCE SE'S MOTION FOR ATTORNEY'S FEES**

COMES NOW the Defendant/Counter-Plaintiff, GREAT LAKES REINSURANCE SE (hereinafter "GLI" and sometimes "Defendant"), by and through its undersigned counsel, pursuant to the Federal Rule of Civil Procedure and Local Rule 7.1 of the United States District Court for the District of Colorado, and moves this Court for an Order awarding GREAT LAKES INSURANCE SE its attorney's fees based on Defendant OPENWATER SAFETY IV, LLC's bad faith in this matter. Further thereto, the Defendant respectfully state as follows:

The instant motion arises out of litigation concerning a policy of marine insurance covering a vessel owned by the Plaintiff, OPENWATER SAFETY IV, LLC (hereinafter "OPENWATER"). DE#152, p. 4. The policy of marine insurance was issued by the Defendant in this matter, GREAT LAKES INSURANCE SE (hereinafter "GLI"). *Id*. As found by this Court, GLI was expressly identified as the insurer on the first page of the Temporary Binder, which stated, "Insurance Provider: Great Lakes Insurance SE." *Id*. When the vessel suffered a dismasting off the coast of Columbia, OPENWATER submitted a claim and GLI investigated the loss. As detailed more thoroughly in this Court's summary judgment order, GLI's investigation

1

uncovered facts from which GLI determined that the policy of marine insurance afforded no coverage for the dismasting. *Id.* Following the denial of coverage, OPENWATER filed the present suit against not only GLI, but also against GLI's underwriting and claims handling agent, Concept Special Risks, Ltd. (hereinafter "Concept").

## Certificate of Conferral

In accordance NYW Civ. Practice Standard 7.1, the undersigned counsel for GREAT LAKES INSURANCE SE has conferred with counsel for the Plaintiff, OPENWATER SAFETY IV, LLC. Counsel for Plaintiff OPENWATER SAFETY IV, LLC objects to the relief sought herein.

## Catalogue of Richard A. Oertli's Esq.'s Personal Bad Faith Misconduct

What began with a simple breach of contract allegation turning in a drawn-out, expensive saga in which counsel for OPENWATER, Richard A. Oertli, Esq. (hereinafter "Mr. Oertli"), demonstrated a level of litigiousness that passed beyond mere zealous advocacy and crossed the boundary into the realm of bad faith. The saga began with the very first pleading, in which Mr. Oertli alleged that Concept was an insurer and that GLI was a reinsurer. There was no basis for these allegations and, as expressly found by this court, these allegations were contradicted by the very documents filed by Mr. Oertli in support of his client's claims. DE45, p. 11.

In an attempt to avoid wasting time and money on motions practice which did not concern the merits of the dispute, the undersigned counsel sent a friendly email to Mr. Oertli informing of the role Concept played in this matter and the impropriety of alleging that Concept was an insurer and had breached the policy of marine insurance. The email of 6/13/2018 is attached hereto as Exhibit 1, p. 3. The undersigned even pointed Mr. Oertli to a prior case from the federal court in the Southern District of Florida which expressly held that Concept (which

2

was then known as "T.L. Dallas") was merely the underwriting and claims handling agent for GLI. Ex 1, p. 3, *citing*, *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F.Supp.2d 1244; 2011 A.M.C. 223 (S.D.Fla.2010).

Later that afternoon, Mr. Oertli responded that he would be willing to dismiss Concept if the undersigned would assure him that Concept played no role in the denial coverage. The email of 6/13/2018 is attached hereto as Exhibit 2. In response, the undersigned set a much longer email, trying with the utmost good faith to explain how Concept's role as agent did not change the fact that GLI, as the insurer who bore financial responsibility for paying any judgment in the present matter, was the only proper party. *Id*, at 1. The unsigned explained that, as the underwriting and claims handling agent for GLI, Concept obviously had authority to receive applications, issue policies, investigate claims, and make coverage decisions. *Id*. That was all properly within the scope of Concept's agency. *Id*. Moreover, precisely because it was Concept which acted for GLI throughout this entire matter, Concept had all the relevant knowledge and it would be Concept that would be responding to discovery requests. *Id*. Nonetheless, acting within very broad authority as agent did not transmute Concept in the insurer, nor could that make Concept liable under a policy of marine insurance in which GLI was clearly identified as the insurer. *Id*.

Next, Mr. Oertli caused this Court to issue a summons for "Concept Special Risks, Ltd," but which identified "William P. Roversi" as the person that Mr. Oertli intended to serve. DE#11. Mr. Oertli must have found the name of Mr. Roversi by searching the for "Concept" in the corporate records of the Florida Secretary of State. However, being sloppy, Mr. Oertli failed to exercise due diligence and failed to realize that the entity he had found on the Florida

3

Secretary of State's website was not "Concept Special Risks Ltd." Rather, M. Oertli had found a defunct entity called "Concept Special Risks Ltd. **_INC._**"

In response, the undersigned sent another email to Mr. Oertli attempting again to explain the role of Concept and that his new summons was a nullity. The email of 6/22/2018 is attached hereto as Exhibit 3. The undersigned patiently explained that Mr. Oertli had made an obvious mistake and that as a result, he had now (1) named an improper party (Concept), (2) caused a summons to be issued for an entity that did not exists (Concept Special Risks Ltd. Inc.), and (3) had failed to properly serve Concept because Roversi was not Concept's agent for service of process. *Id*.

The next day, in express compliance with the safe harbor provision of Fed.R.Civ.P. 11, Mr. Oertli served the undersigned counsel with a Rule 11 motion. Mr. Oertli's email of 6/23/2018 is attached hereto as Exhibit 4 and the Rule 11 motion is attached hereto as Exhibit 5. The Rule 11 motion alleged that the undersigned counsel had asserted "baseless contentions and defenses." Ex 5, p. 2.[1] The Rule 11 motion alleged that the undersigned counsel was personally guilty of bad faith for asserting that Concept was the agent of GLI, that Concept made the decision with respect to underwriting and claim, and that the undersigned was personally guilty of bad faith for attempting to have Concept dismissed from this action. *Id*. The Rule 11 motion alleged that the undersigned counsel was personally aiding in corporate strategy to deny claims in bad faith. *Id*.

---

[1] Rule 11 motions are directed, not at the opposing party, but at the opposing counsel who signed the allegedly offensive pleading. *Eldridge v. Gordon Brothers Group, L.L.C.*, 7863 F.3d 66, 88 (1st Cir.2017), Fed.R.Civ.P. 11(b). Therefore, Mr. Oertli's wild allegations were not the standard, boilerplate bad faith allegations which are casually levelled by every unhappy insured in coverage litigation. Rather, these allegations were specifically aimed at the conduct of the undersigned counsel.

Four days later, while the time was running on the "safe harbor" provision of his Rule 11 motion, Mr. Oertli sent an email to the undersigned counsel demanding the production of documents outside the process of formal discovery, alleging without citation that such production was somehow required by an unspecified rule, and again threatening Rule 11 sanctions for failure to comply with his ridiculous demands. Mr. Oertli's email is attached hereto as Exhibit 6.

On 6/27/2018, another attorney from the law firm of Goldman & Hellman, Steven Goldman, tried again to explain to Mr. Oertli how Concept's involvement in this matter did not make them the insurer. In response, Mr. Oertli made yet another baseless Rule 11 threat, alleging that it was the undersigned counsel who had signed pleadings which lacked sufficient evidentiary support. Mr. Oertli's email of 6/28/2018 is attached hereto as Exhibit 7.

On top of his multiple Rule 11 threats, Mr. Oertli next alleged that there was some ethical problem involved in GLI and Concept being represented by the same counsel. On 7/2/208, Mr. Oertli sent an email stating, "Finally, it has become apparent that you, Ivan and Elizabeth cannot represent both Great Lakes and Concept. Please provide me with the name of Concept's counsel." Mr. Oertli's email of 7/2/2018 is attached hereto as Exhibit 8.

On 7/13/2018, Mr. Oertli again accused the undersigned counsel of violating Rule 11. Mr. Oertli's email of 7/13/2018 is attached hereto as Exhibit 9. In response to GLI's counterclaim asserting numerous bases for lack of coverage under the disputed policy of marine insurance, Mr. Oertli alleged that GLI's counterclaim was a "serious Rule 11 violation" which the undersigned counsel "might want to consider withdrawing or amending." *Id*.

Still attempting to resolve the role of Concept in good faith, the undersigned counsel sent yet another email to Mr. Oertli citing and explaining no less than eight different cases from the

5

last thirteen years in which numerous federal courts had unanimously held that Concept was merely the agent of GLI.  The email of 7/16/2018, along with Mr. Oertli's reply, is attached hereto as Exhibit 10.  In response, Mr. Oertli displayed a troubling ignorance of the very legal principles on which he was relying to support his allegation that the undersigned was in violation of Rule 11.  As he had for the past month, Mr. Oertli continued his refusal to recognize that the acts of an agent do not make the agent a proper party in litigation.  *Id*.  In addition, Mr. Oertli did not even seem to be aware that the acts of an agent do not confer personal jurisdiction over that agent.  *Id*.

On 7/19/2018, Mr. Oertli informed the undersigned that he would be filing a "status report" with the Court, despite the fact that no such report was called for.  Mr. Oertli's email is attached here to as Exhibit 11.  Mr. Oertli submitted to this Court three pages of factual and legal assertions without any citation to the record or citation to supporting caselaw.  DE#19.  It was nothing but a catalogue of Mr. Oertli's dissatisfactions with the legal positions asserting by the undersigned, but without a single citation to any applicable legal principle or rule of law.  *Id*.  As part of this email chain, the undersigned warned Mr. Oertli that the time allowed under Rule 11's "safe harbor" provision had run and that his abusive misuse of Rule 11 would be reported to the Court.  Ex 11.  In response, Mr. Oertli responded with the obtuse argument that he had not actually "served" the Rule 11 motion, but merely a draft, so that corrective action could be taken within the time period of Rule 11's "safe harbor" provision.  *Id*.  Obviously, despite his many threats, Mr. Oertli was entirely ignorant of the requirements of Rule 11 because, under its express terms, it is precisely the service of the Rule 11 motion which triggers the "safe harbor" period.  Fed.R.Civ.P.11(c).  If, as Mr. Oertli confessed, he clearly intended for the "safe harbor"

6

period to begin running on 6/23/2018, then the only way to do that was to act exactly as he did, to serve by email a copy of the motion that he intended to file. *Id.*

On 9/17/2018, Mr. Oertli filed with this Court a memorandum of law opposing Concept's motion to dismiss. DE#29. As specifically admitted by Mr. Oertli in the memorandum of law, the undersigned counsel had already produced for him, on 8/31/2018, a copy of the agency agreement proving that Concept acted throughout this matter as the agent of GLI. *Id*, at 17. Despite have seventeen days to review that document and confirm the undersigned's repeated good faith representations, Mr. Oertli admitted in his memorandum of law that he did not understand the document. *Id*. Despite this lack of understanding, Mr. Oertli did not retreat from his repeated allegations that Concept was the real insurer and that GLI was merely the reinsurer. *Id*.

On 9/25/2018, the undersigned counsel had a doctor's appointment and was informed that a CT scan showed a possible recurrence of the cancer which had been diagnosed and treated in 2006. In order to make time for further appointments and a possible surgical biopsy, the undersigned counsel asked Mr. Oertli if he would agree to an extension of time in which to file Concept's reply in support of its motion to dismiss and GLI's opposition to OPENWATER's motion to amend. In a display of shocking discourtesy, Mr. Oertli refused to consent to such a modest request. Mr. Oertli's email of 9/25/2018 is attached hereto as Exhibit 12.

After six months in which Mr. Oertli had leveled the wildest accusation of unethical conduct against the undersigned counsel, this Court issued its ruling on Concept's motion to dismiss and held that Concept was not a proper party to this action. DE#45. But, for purposes of the present motion for attorney's fees, it is vital to note that this Court did more than merely rule for Concept on the merits of its motion to dismiss. *Id*. First, this Court found no support for Mr.

7

Oertli's claim that federal admiralty law did not apply to the present suit. *Id*, at 9. Second, this Court found that Mr. Oertli was making contradictory allegations to the Court by claiming that OPENWATER never received a contract, but alleging in the pleadings that coverage began under the Temporary Binder on 4/7/2018. *Id*, at 10. Third, this Court held that Mr. Oertli's factual allegations could be completely disregarded because they were plainly belied by the very documents upon which his client's claim depended. *Id*, at 11. Fourth, this Court found that the bad faith claims asserted by Mr. Oertli had to be dismissed as utterly "futile" under New York law. *Id*, at 14. Fifth, and most damning, this Court denied OPENWATER's request to amend its pleading to add further counts against Concept because, in this Court's words, the facts alleged by Mr. Oertli could not "plausibly establish that Concept is the insurer." *Id*, at 21. This is especially demonstrative of Mr. Oertli's bad faith because the standard for amending a complaint is incredibly low. Fed.R.Civ.P. 15. The rule states that leave to amend should be "freely given," at that stage in the litigation, does not require any actual proof. *Id*. However, even with the most permissive possible standard, Mr. Oertli could not allege any set of facts which supported his wild allegations. DE#45. As this Court stated, Mr. Oertli's allegations against Concept were entirely implausible and his attempts to assert any causes of action against Concept were futile. *Id*, at 14 and 21.

Several months later, once discovery had commenced, Mr. Oertli continued abusing the litigation process in multiple ways. First, as had become his habit during the fight over Concept, Mr. Oertli continued to send emails to the undersigned counsel demanding documents and factual concessions outside the channels of normal discovery, attempting to deny GLI the proper amount of time to formulate answers and objections and threatening that failure to comply with

8

his demands would be taken as factual concessions. Mr. Oertli's email of 1/2/2019 attached hereto as Exhibit 13.

Next, Mr. Oertli tried to waste all the parties' time by refusing to depose GLI's Fed.R.Civ.P. 30(b)(6) witness, Beric Anthony Usher, Concept's head of underwriting. Instead, Mr. Oertli demanded to depose Mark Thomas, Concept's head of claims. In contradiction of clear documentary evidence that Mr. Thomas was only the head of claims, Mr. Oertli somehow managed to get the misimpression that Mr. Thomas was involved in making underwriting decisions and in issuing the policy. Mr. Oertli's email of 7/22/2019 is attached hereto as Exhibit 14, p. 2. This is directly contradicted by GLI's Rule 26 disclosures, which identified Mr. Usher as Concept's head underwriter.

In a good faith effort to minimize the costs of discovery, the undersigned counsel told Mr. Oertli directly that Mr. Thomas had nothing whatsoever to do with underwriting and even tried to explain to Mr. Oertli the importance of deposing Mr. Usher. Ex 14, p. 1. On 7/25/2019, the undersigned counsel sent an email to Mr. Oertli citing to five recent federal court decisions in which GLI had been granted summary judgment on the basis of Mr. Usher's testimony that the insured's misrepresentations of material fact were material to his underwriting judgment. *Id*. Those five decisions make absolutely clear the legal basis for GLI's material misrepresentation claims and the specific necessity that an insured contesting such a denial must depose Mr. Usher.

Finally, this Court's summary judgment order detailed multiple facts showing Mr. Oertli's bad faith conduct in this litigation. First, in opposition to GLI's summary judgment motion, Mr. Oertli asserted, without citation, that there was no basis for GLI's asserted fact that Yupanqui was at the helm of the vessel when the mast came down. DE#134, p.2. However, this Court held that Evan Genaud, OPENWATER's 30(b)(6) witness, "unequivocally" testified that

Yupanqui was helming the vessel when the mast came down and that Mr. Oertli argument on this point was not a dispute of fact. DE#152, p. 7 (fn 6). "Unequivocal" is defined as "admitting of no doubt or misunderstanding; clear and unambiguous." *The American Heritage Dictionary of the English Language, Third Edition*, p. 1949 (Houghton Mifflin Company, 1992). Although the fact of Yupanqui's operation of the vessel was clearly beyond any possibility of doubt, Mr. Oertli still tried to argue the contrary, without any supporting evidence. DE#134, p.2.

Second, long after this Court had held that OPENWATER could not repudiate the unfavorable terms of the very documents under which it was claiming coverage, Mr. Oertli continued his attempts to dispute his client's receipt of the policy documents, despite the undisputed evidence that OPENWATER had received the Temporary Binder and the undisputed evidence that OPENWATER's agent received a copy of the policy pamphlet, SYP/8/COM. DE#113, p.7.

There is a further point to note. There is not a single instance in this entire case in which this Court held that any of the claims asserted by Mr. Oertli, either substantive or procedural, contained even a scintilla of merit. The first order in this case which concerned anything more than administrative matters was this Court's order denying OPENWATER's motion to amend its pleading to add claims against Concept and granting Concept's motion to dismiss for lack of personal jurisdiction. DE#45. This Court held that there was no merit to the Plaintiff's contention that federal admiralty law did not apply, that OPENWATER's claim that it never received a policy of insurance was plainly contradicted by the very documents filed in support of its claims for coverage, that the choice of law clause in the policy of marine insurance applied to all possible tort claim and not just contract claims, and that breach of contract and bad faith claims could not be brought against Concept because they were "futile" *Id*, at 10-20. Moreover,

this Court held that even without the burden of proving any asserted fact, counsel for OPENWATER could not even allege any facts to "plausibly establish that Concept is the insurer." *Id*, at 21.  Even six months into the litigation, and a month after GLI responded to OPENWATER's first set of discovery requests, counsel for OPENWATER could not even allege (an action which requires no actual proof) any conceivable set of facts showing that Concept was an insurer.[2]  Finally, in this Court's recent summary judgment decision, the Court not only gave GLI summary judgment on the issue of breach of the named operator warranty, but this Court held that, but for it being unnecessary, this Court would have granted summary judgment to GLI on every one its bases for denial.  DE#152, p. 17 (fn 8).

Despite the total inability of OPENWATER's counsel to even allege that Concept was an insurer, counsel for OPENWATER actually accused the undersigned of violating Fed.R.Civ.P. 11 by attempting to have Concept dismissed from the action.  As detailed above, after the undersigned counsel sent multiple emails to Mr. Oertli explaining the agency role of Concept and the impropriety of asserting breach of contract claims against Concept, Mr. Oertli actually had the temerity to serve a Rule 11 motion accusing the undersigned of asserting "baseless contentions and defenses." Ex 5, p. 2. Mr. Oertli claimed that "Great Lakes was not disclosed on the Insuring Agreement," despite the Temporary Binder's express statement, "Insurance Provider: Great Lakes Insurance SE." Ex 5, p. 3. Mr. Oertli alleged that there could be no good faith basis for contending that Concept is not a proper party. Ex 5, p. 6.

Later, based on the undersigned's "baseless contentions and defenses," this Court held, without reservation, that Concept was not an insurer, that Concept could not be liable for breach of contract, that Concept was not a proper party to this action, and that Concept was not subject

---

[2] GLI served its responses to OPENWATER's first set of interrogatories on August 15, 2018.  Concept filed its motion to dismiss on August 27, 2018. DE#26.

to personal jurisdiction in the District of Colorado.  DE#45.  This Court held that GLI was plainly disclosed as the insurer on the first page of the Temporary Binder.  DE#45.  This Court held that Mr. Oertli's attempts to keep Concept in this litigation were not merely wrong, but utterly "futile" because none of the alleged facts "plausibly establish that Concept is the insurer." DE#45.  Despite undertaking discovery, despite the good faith efforts of the undersigned counsel to explain the relationship between GLI and Concept, and despite multiple reported decisions declaring that Concept is merely the agent of the insurer, Mr. Oertli wasted time and effort and responded by accusing the undersigned of making argument so fallacious that they violated Rule 11.

## **Argument**

As a threshold matter, it is necessary to note that this Court, sitting in admiralty, has inherent authority to punish Mr. Oertli's bad faith conduct, without recourse to any specific bad faith statute or to Rule 11.  "[A]llowance of counsel fees and other expenses entailed by litigation, but not included in the ordinary taxable costs regulated by statute, is part of the historic equity jurisdiction of the federal courts."  *Vaughan v. Atkinson*, 369 U.S. 527; 1962 A.M.C. 1131 (1962), *JTR Enterprises, LLC v. Columbian Emeralds*, 697 Fed.Appx. 976 (C.A.11.2017). "[W]hereas each of the [statutory and rule] mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses."  *Id*, at 987, *citing*, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  Such bad-faith fee-shifting is meant to punish abuses of the litigation process.  *Galveston County Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358; 1996 A.M.C. 2850 (C.A.5.1996).  Moreover, it is irrelevant that, when this suit was filed, it was premised on diversity jurisdiction.  *Kalmbach, Inc. v. Insurance Co. of State of*

*Pennsylvania*, 422 F.Supp. 44, 46 (D.Alaska.1976).  GLI invoked this Court's admiralty jurisdiction with its first filing, its Answer and Counterclaim.  DE#9.

For instance, the case of *Reliable Salvage and Towing, Inc. v. Bivona* concerned a dispute over whether a valid contract for salvage had been formed.  476 Fed.Appx. 852; 2013 A.M.C. 591 (C.A.11.2012).  Although the court found that no valid salvage contract had ever been formed, the court found that the salvor was still entitled to a salvage award as a matter of law. *Id*, at 1377.  The court found bad faith based on the vessel owner's assertion of the legally frivolous argument that the vessel was not in peril at the exact moment that the salvage was undertaken.  *Id*, at 854.  Litigation on this issue was futile because there was no dispute as to the dispositive fact that the vessel was facing peril in the very near future.  *Id*.  It was legally irrelevant that the vessel was not yet in peril.  *Id*.  Therefore, the court found that the vessel owner's litigation on this point was in bad faith.  *Id*.

To give another example, the very recent *JSM Marine* case concerned another salvage dispute.  *JSM Marine LLC v. Gaughf*, 407 F.Supp.3d 1358; 2019 A.M.C. 2592 (S.D.Ga.2019). After the salvor rescued a vessel that had run aground on rocks during Hurricane Mathew, a fight ensued over the proper amount of the salvage award.  *Id*, at 1362.  After awarding judgment to the salvor on the merits, the court proceeded to catalogue the vessel owner's bad faith conduct in the litigation.  *Id*, at 1378.  The court granted the request for attorney's fees based on the frivolous defenses raised by the vessel owner, the denial of certain basic facts without evidentiary support, and counsel's ignorance of the applicable legal principles.  *Id*, at 1379.

This is exactly like OPENWATER and Mr. Oertli in the present case.  As found by this Court, OPENWATER and Mr. Oertli have, on multiple occasions, raised frivolous defenses and disputed facts without any basis in the record.  For instance, this Court found absolutely no

support for Mr. Oertli's contention that admiralty law did not apply, this Court found that Mr. Oertli's arguments were based on obvious factual contradictions, this Court found that Mr. Oertli's facts were plainly belied by the very documents filed in support of OPENWATER's claims, this Court found that Mr. Oertli's bad faith claims were "futile" under New York law, and this Court found that Mr. Oertli could not even state plausible allegations against Concept. DE#152 and DE#45.

On summary judgment, this Court held that the evidence was "unequivocal" that Yupanqui was operating the vessel at the time of loss, despite Mr. Oertli's incredible contention that there was no such evidence. DE#152, p. 7. Also on summary judgment, Mr. Oertli continued to argue that his client had not received the relevant policy documents, despite this Court holding months before that this was an utterly irrelevant issue. DE#94, p. 5, DE#45.

As detailed in the attached exhibits, GLI incurred $143,768.57 in fees defending against Mr. Oertli's abusing litigation. Goldman & Hellman's invoices to GLI, including local counsel's fees and expenses, are attached hereto as Exhibit 15. Attached hereto as Exhibit 16 is the undersigned's affidavit, attesting that Goldman & Hellman charged GLI at a rate of $185.00/hour for the present case. Therefore, as an appropriate punishment for Mr. Oertli's bad faith conduct in pursuit of a futile claim, GLI asks this Court to award $67,086.33 in attorney's fees, for the time spent in the early stages of litigation battling over the role of Concept and for the time spent submitting a meritorious summary judgment motion..

## **Conclusion**

As detailed above, the proceedings in this case have been substantially multiplied by Mr. Oertli's consistent practice of ignoring the facts, misrepresenting the facts to this Court, and remaining willfully ignorant of the dispositive legal principles. Moreover, Mr. Oertli's personal

bad faith conduct does not end there.  His disregard of the facts and the law is made worse by his personal belligerence and personal attacks on the undersigned counsel.  Mr. Oertli's personal belligerence added substantially to the costs of utterly unnecessary litigation.  For these reasons, and to deter such conduct in the future, GLI asks this Court for an award of attorney's fees in the amount of $67,086.33.

WHEREFORE, Defendant GLI requests that this Court compensate GLI for Mr. Oertli's bad faith in this litigation and issue and order that OPENWATER pay GLI's attorney's fees in this matter and award all such further relief as may be appropriate in the premises.

Respectfully submitted, this 10th day of February, 2020

ATTORNEYS FOR GREAT LAKES
INSURANCE SE

| McCONAUGHY & SARKISSIAN, P.C. | GOLDMAN & HELLMAN |
|---|---|
| By: /s/ *Elizabeth C. LaVance* | By: /s/ Michael I. Goldman |
| Ivan A. Sarkissian, CO Bar No. 28817 | Michael I. Goldman, MA Bar No. 677362 |
| Elizabeth LaVance, CO Bar No. 50751 | Goldman & Hellman |
| 8310 South Valley Highway, Suite 250 | 233 Harvard Street, Suite 211 |
| Englewood, Colorado 80112 | Brookline, MA  02446 |
| Tel: (303) 649-0999 | Tel: (617) 566-4200 |
| Fax: (303) 649-0990 | Fax: (617) 566-4292 |
| Email: isarkissian@mslawpc.com | Cell: (617) 320-9854 |
| Email: elavance@mslawpc.com | Email: michael@goldmanandhellman.com |

## CERTIFICATE OF SERVICE

  I hereby certify that on February 20, 2020, I electronically filed the foregoing **GREAT LAKES INSURANCE SE'S MOTION FOR ATTORNEY'S FEES** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Oertli, #24926
24800 Squaw Pass
Evergreen, CO  80439
Tel: (720) 799-5217
E-mail: dickoertli@gmail.com
*Counsel for Openwater Safety IV, LLC*


               By:  /s/  *Michael I. Goldman*
                  Michael I. Goldman

16